JOURNAL ENTRY and OPINION
{¶ 1} The State of Ohio appeals from the judgment of the Cuyahoga County Court of Common Pleas, which granted Terry Oliver's motion to suppress. On appeal, the State assigns the following error for our review:
"I. The trial court erred when it sustained appellant's motion to suppress as the police fully complied with Ohio's knock and announce statute before gaining access to execute the search warrant."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.
 {¶ 3} On May 1, 2003, the Cuyahoga County Grand Jury indicted Oliver for one count each of drug trafficking, possession of drugs, possession of criminal tools, and of having a weapon while under disability. Oliver pled not guilty at the arraignment, and thereafter, filed a motion to suppress. On November 18, 2004, the suppression hearing commenced.
 SUPPRESSION HEARING {¶ 4} At the suppression hearing, Officer Jason Warrington of the Cleveland Police Department testified he is assigned to the Special Weapons and Tactics unit (SWAT). As member of SWAT, he executes search warrants for the narcotics and vice units, and also participates in strike force operations.
 {¶ 5} Officer Warrington testified that on March 22, 2003, he and eight officers of the Cleveland Police Department executed a search warrant at 12105 Chesterfield Avenue in Cleveland, Ohio. In this operation, he was assigned the job of the point man. Officer Warrington explained that the point man is responsible for yelling "Cleveland Police SWAT unit, we have a search warrant for the house. Open the door."[1]
Further, the point man is the first person that enters the premises after the door is opened.
 {¶ 6} According to Officer Warrington, they arrived to execute the search warrant shortly after midnight. The officers approached the front of the house and positioned themselves on the porch. The house had a metal security door, which was located in front of the main door to the house. The metal security door opens outwards onto the porch, and was unlocked when the officers arrived. Officer Livingston knocked three or four times on the metal security door, while Officer Warrington announced that they were there to execute a search warrant.
 {¶ 7} Upon getting no response, Officer Warrington looked through the picture window into the living room, where he saw a male lying on a couch and another male sitting in a chair with his back toward the window. Officer Warrington informed his supervisor that neither of the individuals were making any attempt to open the door. The supervisor then ordered Officer Livingston to break down the main door to the residence.
 {¶ 8} In less than a minute after arriving at the home, nine officers entered the residence. Upon the officers' entry, they discovered a third male lying on a couch that was directly in front of the door. In the process of the officers storming into the residence, this individual was knocked off the couch and landed face down on the floor. Officer Warrington secured the individuals until a protective sweep of the residence was complete.
 {¶ 9} The ensuing search of the residence resulted in the seizure of a large black bag containing marijuana, a gun, three hundred-thirty dollars, and miscellaneous drug paraphernalia. The officers also discovered two additional males in the home.
 {¶ 10} At the conclusion of the hearing, the trial court granted Oliver's motion to suppress. The State now appeals.
 MOTION TO SUPPRESS {¶ 11} In its sole assigned error, the State argues the trial court erred in granting Oliver's motion to suppress. We disagree.
 {¶ 12} An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact. Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[2] Thus, the credibility of witnesses during a suppression hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility.[3] Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.[4]
 {¶ 13} In the instant case, the State contends that the police did not violate the knock and announce rule in executing the search warrant, because exigent circumstances justified their entry.
 {¶ 14} When the requirements of a state statute regarding search warrants are not strictly complied with, the relevant Fourth Amendment inquiry becomes whether the search was reasonable.[5] The Fourth andFourteenth Amendments of the United States Constitution require searches to be reasonable in order to be valid. Forced entry by police is justified in the following circumstances: "when lawful entry into a residence has been refused or when necessary to protect the police, to prevent disposal of evidence or contraband, or to forestall escape."[6]
The reasonableness of the circumstances will be determined on a case by case basis.[7]
 {¶ 15} The common law knock and announce rule forms part of the reasonableness inquiry under the Fourth Amendment and requires that officers knock on the door and announce their identity and purpose before forcibly entering a residence.[8] The rule has been codified in Ohio in R.C. 2935.12, which provides:
"When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant."
 {¶ 16} Oliver successfully argued that since the police broke into the residence without first having been refused admittance, the forced entry was illegal under the above cited statute. We agree.
 {¶ 17} The following exchange took place at the suppression hearing:
"The Court: When you looked in the window were the lights on?
The Witness: Yes.
The Court: Okay. There were two people in the living room?
The Witness: Two that I saw.
The Court: To be accurate. When you saw the people, you knocked on the door and they didn't react like people who were wide awake and would get up and try to do anything, did they?
The Witness: No.
The Court: Fair to say they acted like they didn't even hear it? Is that a fair statement?
The Witness: They made no movements at all."[9]
"* * *
"The Court: Did anybody in the house make any movement toward the front door when you knocked and announced that you were there?
The Witness: No, Sir.
The Court: But, as I gather, those people didn't move anyways?
The Witness: Correct.
The Court: They stayed there?
The Witness: Yes.
The Court: They weren't trying to flee, so far as you could see, right? They were just stationary?
The Witness: Yes."[10]
"* * *
"The Court: If they didn't move at all, how can we know whether they heard you?
The Witness: I don't know, sir.
The Court: Was there a window anywhere along the front of the house where the porch was?
The Witness: Yes, sir.
The Court: Is there a window into that living room?
The Witness: Three windows, actually, sir, where it juts out and a main picture window.
The Court: Did anybody try to knock on the window to attract their attention, or anything?
The Witness: No, sir.
The Court: Why would it not have been appropriate to knock on the window to attract their attention?
The Witness: In my opinion, if someone didn't hear us bang on the door and yell on the front porch, they wouldn't hear a knock on the window."[11]
 {¶ 18} It is evident from the above exchanges that none of the occupants of the home, including Oliver, were sufficiently alerted to have refused admittance. However, the State essentially argues that the occupants' inaction was tantamount to refusal, and because of exigent circumstances they were justified in entering the residence. We are not persuaded.
 {¶ 19} Though courts have recognized that silence constitutes an implied refusal of admittance,[12] we conclude in the instant case that the occupants' inaction is attributable to not being sufficiently alerted. Furthermore, no exigent circumstances justified entry at the time it was made. Some courts have held that the police may avoid strict compliance with the knock and announce rule where the evidence sought is by its nature capable of being quickly and easily destroyed.[13]
However, other courts have required that articulable facts must be introduced which prove that in the particular case there is a strong probability that evidence will be destroyed.[14] We believe that the latter is the better approach.
 {¶ 20} In this case, the officers were able to observe occupants of the house through the picture window. Thus, they would have been able to observe any attempt at destroying evidence. No such attempt was observed. In fact, Officer Warrington testified that one of the men was lying on a couch, while the other was sitting on a chair with his back towards the window. Most importantly, neither men moved. Additionally, Officer Warrington testified that in entering the residence, they knocked a third male to the floor, who had been laying on a couch that was directly in front of the door. Arguably, this individual would have been alerted if the officers had knocked hard enough. Here, although the State argues that exigent circumstances existed to justify their entry, a review of the record reveals that it is devoid of any evidence which could establish this justification.
 {¶ 21} Furthermore, the trial court stated it was troubled that the police did not go through the steps an ordinary visitor would go through before concluding that they had to break in. The trial court stated:
"I'm bothered here that what was done here is different than from what I would do if I were going to the door of somebody's house. I would ring the doorbell, I would knock on the door; and if I saw somebody sitting in the living room and they didn't respond, I would go to the window and I would knock on it and I would yell * * *"[15]
 {¶ 22} Nevertheless, the State cited State v. Litvin[16] and Statev. Richards,[17] two decisions from this court, to support its position that where the police knock and announce themselves but are not admitted, they may forcefully enter. However, a review of the cited cases indicates that they are distinguishable from the facts of the present case. In Litvin, the police forcibly opened the door after there was no response. The defense insisted, however, that the door was open when the police arrived and that the police simply entered without knocking and announcing. The trial court concluded that the testimony offered by the State was more credible than the testimony offered by the defendant.
 {¶ 23} Likewise, in Richards, the State maintained that the police forcibly opened the door after there was no response. The defense insisted, however, that the police did not knock and announce prior to entering and offered testimony of the defendant who was upstairs in the bathroom when the police entered. Again, the trial court found the State's testimony to be more credible than the defense's testimony and determined that law enforcement officers did knock and announce their presence before entering defendant's home.
 {¶ 24} Here, unlike Litvin and Richards, where one defendant argues the door was already opened and the other argues he was in the bathroom, we have two individuals in plain view of the police when they allegedly knocked on the metal security door. A third individual, unbeknown to the police, was lying on a couch in front of the door, and arguably should have heard the knock. Under the facts of the instant case, the State's argument that there was refusal, constructive or absolute, is tenuous at best.
 {¶ 25} A review of the record before us indicates that the occupants of the home were not sufficiently alerted to permit the police to infer that their admittance was refused.[18] The trial court found the defense's testimony to be more credible than the State's testimony and determined that the law enforcement officers did not sufficiently alert the occupants to their presence and purpose before entering the home. We conclude that there is no basis in the record or in law to disturb the determination of the trial court that the manner in which this search warrant was executed was unreasonable, and, as a consequence, that evidence seized as a result thereof should be suppressed.[19]
Accordingly, we overrule the State's sole assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, J., and Sweeney, J., concur.
[1] Tr. at 7.
[2] See State v. Robinson (1994), 98 Ohio App.3d 560; State v.Rossiter (1993), 88 Ohio App.3d 162; State v. Lewis (1992),78 Ohio App.3d 518; State v. Warren (Aug. 12, 1991), 4th Dist. No. 90CA7.
[3] See State v. Mills (1992), 62 Ohio St.3d 357; State v. Fanning
(1982), 1 Ohio St.3d 19.
[4] See State v. Harris (1994), 98 Ohio App.3d 543.
[5] Wilson v. Arkansas (1995), 514 U.S. 927, 115 S. Ct. 1914,131 L. Ed. 2d 976; State v. Smith (Mar. 16, 1994), 9th Dist. No. 93CA005585; State v. Southers (June 8, 1992), 5th Dist. No. CA-8682.
[6] State v. Davies (Jan. 8, 1986), 1st Dist. Nos. C-850112, C-850113, C-850128, C-850129.
[7] Id.
[8] See Wilson v. Arkansas (1995), 514 U.S. 927, 115 S. Ct. 1914,131 L. Ed.2d 976, paragraph one of the syllabus; State v. Allen, 2nd Dist. No. 18788, 2002 Ohio 263.
[9] Tr. at 34-35.
[10] Tr. at 48.
[11] Tr. at 50.
[12] See State v. Edmonds (July 26, 2002), 2nd Dist. No. 19129, 2002-Ohio-3807. See also U.S. v. Banks (2003), 124 S.Ct. 521.
[13] See State v. Roper (1985), 27 Ohio App.3d 212, 213.
[14] See, State v. Dixon, 141 Ohio App.3d 654, 661, 2001-Ohio-2120.
[15] Tr. at 84.
[16] (Aug. 12, 1999), Cuyahoga App. No. 74563 and 74564.
[17] (Jan. 10, 2002), Cuyahoga App. No. 78813, 2002-Ohio-9.
[18] See State v. Alford (May 21, 1973), 1st Dist. No. C-72457.
[19] Mapp v. Ohio (1961), 367 U.S. 643.