THE STATE OF OHIO, APPELLANT, *v.* OLIVER, APPELLEE.

[Cite as *State v. Oliver*, 112 Ohio St.3d 447, 2007-Ohio-372.]

(No. 2005–1967—Submitted November 15, 2006—Decided February 14, 2007.)

O'CONNOR, J.

{¶ 1} We draw the salient facts from those found by the trial court during the suppression hearing. At that juncture, "the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Appellate courts are bound to accept those facts as true if they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. Applying that deferential standard, the court of appeals described the following facts, which it appears to have drawn from the transcript of the suppression hearing in the trial court.

{¶ 2} Members of the Special Weapons and Tactics Unit of the Cleveland Police Department executed a search warrant at the residence of appellee, Terry Oliver, at approximately midnight on March 22, 2003. *State v. Oliver*, Cuyahoga App. No. 85606, 2005-Ohio-4411, 2005 WL 2045792, ¶ 5–6. "The officers approached the front of the house and positioned themselves on the porch. The house had a metal security door, which was located in front of the main door to the house. The metal security door opens outwards onto the porch, and was unlocked when the officers arrived. Officer Livingston knocked three or four times on the metal security door, while Officer Warrington announced that they were there to execute a search warrant.

{¶ 3} "Upon getting no response, Officer Warrington looked through the picture window into the living room, where he saw a male lying on a couch and another male sitting in a chair with his back toward the window. Officer Warrington informed his supervisor that neither of the individuals were making any attempt to open the door. The supervisor then ordered Officer Livingston to break down the main door to the residence.

{¶ 4} "In less than a minute after arriving at the home, nine officers entered the residence. Upon the officers' entry, they discovered a third male lying on a

couch that was directly in front of the door. In the process of the officers storming into the residence, this individual was knocked off the couch and landed face down on the floor. Officer Warrington secured the individuals until a protective sweep of the residence was complete.

{¶ 5} "The ensuing search of the residence resulted in the seizure of a large black bag containing marijuana, a gun, three hundred-thirty dollars, and miscellaneous drug paraphernalia. The officers also discovered two additional males in the home.

{¶ 6} "At the conclusion of the hearing, the trial court granted Oliver's motion to suppress." *State v. Oliver*, Cuyahoga App. No. 85606, 2005-Ohio-4411, 2005 WL 2045792, ¶ 6–10.

{¶ 7} The court of appeals affirmed.

{¶ 8} The case is before us on our acceptance of a discretionary appeal.

{¶ 9} Nothing in the record before us suggests that the warrant was not valid. But despite the apparent validity of the warrant, in executing it, the police were expected to comply with the "knock and announce" rule, which predates the United States Constitution but is reflected in the Fourth Amendment, *Wilson v. Arkansas* (1995), 514 U.S. 927, 931–936, 115 S.Ct. 1914, 131 L.Ed.2d 976, and codified in statute. See, e.g., R.C. 2935.12 and Section 3109, Title 18, U.S.Code. Exceptions exist, but the rule directs police officers executing a search warrant at a residence to first knock on the door, announce their purpose, and identify themselves before they forcibly enter the home. *Wilson*, 514 U.S. at 935–936, 115 S.Ct. 1914, 131 L.Ed.2d 976.

{¶ 10} The state contends here, as it did in the trial and appellate courts, that the entry by the police was lawful. The courts that have considered this case thus far, however, have unequivocally disagreed. As the Eighth District held, "Under the facts of the instant case, the State's argument that there was refusal [to permit police entry], constructive or absolute, is tenuous at best. A review of the record before us indicates that the occupants of the home were not sufficiently alerted to permit the police to infer that their admittance was refused. The trial court found the defense's testimony to be more credible than the State's testimony and determined that the law enforcement officers did not sufficiently alert the occupants to their presence and purpose before entering the home. We conclude that there is no basis in the record or in the law to disturb the determination of the trial court that the manner in which this search warrant was executed was unreasonable, and, as a consequence, that evidence seized as a result thereof should be suppressed." *State v. Oliver*, Cuyahoga App. No. 85606, 2005-Ohio-4411, 2005 WL 2045792, ¶ 24–25.

{¶ 11} After the court of appeals entered its decision and before we heard the case for oral argument, the United States Supreme Court issued its decision in *Hudson v. Michigan* (2006), —— U.S. ——, 126 S.Ct. 2159, 165 L.Ed.2d 56. In *Hudson*, the court concluded that even if the police violate the knock-and-announce rule before executing a search warrant, the Fourth Amendment does not necessarily require the suppression of all evidence found in the ensuing search. *Hudson*, —— U.S. ——, 126 S.Ct. at 2168–2170, 165 L.Ed.2d 56.

{¶ 12} As the court noted in *Hudson*, the exclusionary rule and the concomitant suppression of evidence generate " 'substantial social costs' " in permitting the guilty to go free and the dangerous to remain at large. *Hudson*, —— U.S. ——, 126 S.Ct. at 2163, 165 L.Ed.2d 56, quoting *United States v. Leon* (1984), 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677. Because of that " 'costly toll,' " the courts must apply the exclusionary rule cautiously and only in cases where its power to deter police misconduct outweighs its costs to the public. *Hudson*, —— U.S. ——, 126 S.Ct. at 2163, 165 L.Ed.2d 56, quoting *Pennsylvania Bd. of Probation & Parole v. Scott* (1998), 524 U.S. 357, 363–365, 118 S.Ct. 2014, 141 L.Ed.2d 344. Given that *Hudson* is the most recent pronouncement on the exclusionary rule by the United States Supreme Court, that it was decided while this appeal was pending, and that the people of Ohio have a paramount interest in knowing how their courts will interpret and apply *Hudson*, we have a duty to see that *Hudson* is addressed as expeditiously as possible.

{¶ 13} *Hudson* presents a significant and arguably new interpretation of the exclusionary rule, and in its wake, the question becomes whether exclusion of the evidence against the appellee was mandated. Without opining on the propriety of the courts' rulings on the validity of the search at issue here, we remand this cause to the trial court to reconsider its ruling in light of *Hudson*.

*Judgment accordingly.*

MOYER, C.J., HARSHA, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

PFEIFER, J., dissents.

LANZINGER, J., would dismiss the appeal as having been improvidently accepted.

WILLIAM H. HARSHA, J., of the Fourth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

———

**PFEIFER, J., dissenting.**

{¶ 14} The police in this case burst through the front door; the majority today sneaks through the jurisprudential back door, tacitly adopting the United States

Supreme Court's decision in *Hudson v. Michigan* (2006), —— U.S. ——, 126 S.Ct. 2159, 165 L.Ed.2d 56. The majority writes that "the people of Ohio have a paramount interest in knowing how their courts will interpret and apply *Hudson* * * *." However, the paramount question is *whether* Ohio courts should apply *Hudson*, a question that can be answered only after this court determines whether Section 14, Article I of the Ohio Constitution provides greater protection to Ohioans in their own homes than does the United States Constitution.

{¶ 15} The Ohio Constitution "is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups." *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163, paragraph one of the syllabus.

{¶ 16} In *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, syllabus, this court diverged from federal Fourth Amendment jurisprudence, holding, "Section 14, Article I of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors."

{¶ 17} Again, in *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 49, this court held that the exclusionary rule provides greater protection to defendants pursuant to Section 10, Article I of the Ohio Constitution (the Self–Incrimination Clause) than it does under the Fifth Amendment of the United States Constitution. In *Farris*, we held that physical evidence gathered as a result of statements made in custody without the benefit of a *Miranda* warning should be excluded; earlier, in *United States v. Patane* (2004), 542 U.S. 630, 643, 124 S.Ct. 2620, 159 L.Ed.2d 667, the United States Supreme Court had held that the admission of such evidence was not unconstitutional.

{¶ 18} This court should determine in this case whether the Ohio Constitution provides greater protections against forcible entries of homes than the United States Constitution does, and whether those protections include rendering inadmissible the fruits of such entries. To stop short of answering that question is a squandering of judicial resources. The author of *Hudson*, Justice Antonin Scalia, describes himself as an originalist in Constitutional matters; it appears, however, that when it comes to the Fourth Amendment, he and the slim majority in *Hudson* are minimalists. We owe it to the citizens of Ohio to determine now, in this case, whether Ohio jurisprudence should follow.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Maureen Clancy and T. Allan Regas, Assistant Prosecuting Attorneys, for appellant.

Repper, Powers & Pagan, Ltd., and Christopher J. Pagan, for appellee.