[Cite as *State v. Edwards*, 2017-Ohio-8867.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105163**

# STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

# DEVON R. EDWARDS

DEFENDANT-APPELLEE

## JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-606319-A

**BEFORE:** Jones, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 7, 2017

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Mary M. Dyczek
Assistant County Prosecutor
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Mark Stanton
Cuyahoga County Public Defender

BY: John T. Martin
        Erika B. Cunliffe
Assistant County Public Defenders
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} In this appeal, plaintiff-appellant, the state of Ohio, challenges the trial court's November 9, 2016 judgment granting the motion to suppress of defendant-appellee, Devon Edwards ("Edwards"). For the reasons that follow, we reverse and remand.

{¶2} In May 2016, Edwards was charged, along with several codefendants, with six drug-related crimes. Several forfeiture specifications accompanied the charges, and two of the counts, drug trafficking, also contained schoolyard specifications.

{¶3} In August 2016, Edwards filed a motion to suppress statements and evidence, contending that the search and seizure was unconstitutional. Edwards contended, in large part, that the search and seizure was based solely on an insufficient anonymous tip. The state opposed the motion, contending that the search and seizure was not based on an anonymous tip. Rather, according to the state, the police's initial contact with Edwards was a consensual encounter that subsequently rose to an investigatory detention because the police had reasonable suspicion based on specific, articulable facts that warranted the seizure. The trial court held a hearing, at which the following pertinent facts were adduced.[1]

{¶4} Officer Lee Ester ("Officer Ester") of the Bedford Heights police department testified at the hearing. Sometime during the two o'clock afternoon hour on the day in

---

[1]A joint suppression hearing was held with Edwards and one of his codefendants, Ibraham Alim, whose appeal is also pending before this court. *State v. Alim*, 8th Dist. Cuyahoga No. 105164.

question, the officer was dispatched to the parking lot of Perkins Plaza in Bedford Heights as the result of an anonymous 911 call. The caller told the dispatcher that there were two people in a black older model Chevrolet Blazer in the parking lot selling drugs out of the vehicle. The caller further stated that the vehicle only had a temporary tag on the back, and that one of the men was wearing a white T-shirt. According to the tipster, he heard one of the men say to a passerby, "What's up? What do you need?"

{¶5} Officer Ester testified that when he first arrived to the scene he did not see the vehicle, but after "catch[ing] it out of the corner of [his] eye," he drove to it and pulled into an open spot right behind the vehicle, which matched the description given to him by dispatch, including that it had a temporary tag on the back. He was in full uniform and driving a standard, marked police cruiser. He testified that he did not activate his lights or siren. He exited the police cruiser — without his gun drawn and not shouting commands — and walked toward the suspect vehicle.

{¶6} As Officer Ester approached the vehicle, he saw two males standing by the driver's side door, which was open, talking to the driver, codefendant Ibraham Alim ("Alim"). In addition to the driver, there was a front seat passenger and a rear seat passenger; Edwards was the front seat passenger. Officer Ester saw that Alim and Edwards were wearing white T-shirts, as had been described to him by the dispatcher. According to the officer, "[w]hen [he] approached the vehicle, [he] could smell marijuana in the area," "coming from inside the vehicle."

{¶7} Officer Ester asked the two individuals standing outside and the driver for

identification, and they complied. Edwards got out of the vehicle and Officer Ester ordered him back in; Edwards complied. The officer learned from dispatch that the two men who were standing outside the vehicle had warrants from other jurisdictions so he handcuffed them.

{¶8} Meanwhile, back-up Officer Jeremy Blackstone ("Officer Blackstone") had arrived on the scene, and Officer Ester motioned to him to go to the front passenger side of the vehicle because, as mentioned, that occupant (Edwards) had previously exited the vehicle. Officer Blackstone testified that Edwards was not free to leave. Other officers also arrived on the scene. Officer Blackstone was wearing a body camera, and a portion of the video from it was played for the court at the hearing.

{¶9} Officer Blackstone testified that the front passenger door was open, and as he walked toward it, he saw Edwards bent over with his hands underneath the front passenger seat. When he arrived at the vehicle's front passenger door, Edwards was upright and did not have anything in his hands. Officer Blackstone asked Edwards what he had placed underneath the seat, and he first replied "nothing," but then said it was his cell phone. Officer Blackstone testified that Edwards then retrieved a cell phone from "towards the flooring where your feet would be, but not underneath the seat."

{¶10} Officer Blackstone testified that "alerts" went off and he was concerned for officer safety based on the nature of the call, Edwards's movements and inconsistent answer about what was placed under the seat. Officer Blackstone further testified that there was a "strong odor of a marijuana-type substance coming from the vehicle," which

he mentioned to the occupants. Alim, the driver, pointed to his left and responded that "they were just smoking right there." The officer asked if he could search the vehicle, to which Alim responded he could "bring the sniffing dogs."

{¶11} After talking to Edwards on the side of the car, the officer ordered Edwards out of the vehicle and searched him; a little over $700 was recovered from his person. Officer Blackstone then looked under the front passenger seat and discovered a scale. The other occupants were then removed from the vehicle and a complete search of it was conducted. Drugs were recovered from in the car and under the car, on the ground by the passenger side of the car. Drug paraphernalia was also recovered from in the car.

{¶12} On this evidence, the trial court granted Edwards's motion to suppress. The state now appeals, and in its sole assignment of error challenges the trial court's decision to grant the motion.

{¶13} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Oliver*, 8th Dist. Cuyahoga No. 85606, 2005-Ohio-4411, ¶ 12. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Harris*, 98 Ohio App.3d 543, 546, 649 N.E.2d 7 (8th Dist.1994). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court,

whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶14} The trial court found that, although the anonymous tip turned out to be accurate, the tipster "did not explain what inside information he had about the alleged illegal activity," and therefore, the tip was "not corroborated." The court likened it to the circumstances in *State v. Whitsette*, 8th Dist. Cuyahoga No. 92566, 2009-Ohio-4373. In *Whitsette*, an anonymous informant told the police that two males, Robert and Terrence Whitsette, were engaged in drug activity in a specific area of Cleveland. The informant told the police that the Whitsettes drove a blue Thunderbird and often had weapons on their persons.

{¶15} The police, in an undercover vehicle, went to the identified area and saw a blue Thunderbird parked in a driveway, facing toward the street; two males were in the vehicle. As the police stopped their undercover vehicle, the passenger got out of the Thunderbird and ran. The police ordered the driver, Robert Whitsette, out of the vehicle, and because the informant said he often had a gun, the police conducted a pat-down search of him. The police asked Whitsette if he had any contraband on his person and he responded that he had marijuana. The police recovered the marijuana, along with several rocks of cocaine and almost $400 in cash. The passenger was not Terrence Whitsette, but a 14-year-old relative of Robert Whitsette.

{¶16} Whitsette was charged with drug trafficking and drug possession. He filed a motion to suppress the evidence, and after a hearing, the trial court granted his motion.

The state appealed. This court upheld the trial court's judgment, finding that the "anonymous tip did not provide the officers with information upon which the officers could test the informant's veracity." *Id.* at ¶ 11. This court reasoned that although the anonymous informant knew general information about the men, it was information "that anyone who knew the Whitsettes could provide. The caller-informant failed to provide more specific details that the officers could corroborate for veracity and failed to indicate the caller-informant possessed inside knowledge of the criminal behavior." *Id.*

{¶17} Relying on the United States Supreme Court's pronouncement on the nature of the corroboration required to render an anonymous tip reliable, this court found the corroboration insufficient. Specifically, in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the United States Supreme Court stated the following about corroboration of the informant's tip:

> The anonymous call concerning J.L. provided no predictive information and, therefore, left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L.

*Id.* at 271.

{¶18} The court went on to state that,

> [a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse.

Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. Cf. 4 W. LaFave, Search and Seizure § 9.4(h), p. 213 (3d ed.1996) (distinguishing reliability as to identification, which is often important in other criminal law contexts, from reliability as to the likelihood of criminal activity, which is central in anonymous-tip cases).

*Id.* at 272; *see also State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 42 (citing *J.L.* and noting that the police's partial corroboration of an anonymous informant's tip alone did not give police a reasonable suspicion of criminal activity to justify a stop).

{¶19} Here, the trial court found that the anonymous call was specific as to the car, the location and that at least one male was wearing a white T-shirt, but the informant "did not explain what inside information he had about the alleged illegal activity." On this evidence the court found that the anonymous tip was similar to the tip in *Whitsette* and, therefore, uncorroborated.

{¶20} We agree with the trial court that the anonymous tipster's information was not specific as to the alleged criminal activity, but do not believe the inquiry should have ended there. It is a well-settled principle that law enforcement officials may approach a parked vehicle and question the occupants without a reasonable and articulable suspicion of criminal activity. *State v. Richmond*, 8th Dist. Cuyahoga No. 105036, 2017-Ohio-2860, ¶ 10; *State v. Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422, ¶ 14; *State v. Boys*, 128 Ohio App.3d 640, 642-643, 716 N.E.2d 273 (1st Dist.1998). In such an instance, the approach would be for the purpose of a

consensual encounter, which generally does not trigger Fourth Amendment scrutiny. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

{¶21} The officers' testimony that the occupants were not free to leave when Officer Ester initially pulled his cruiser behind the subject vehicle or when both officers started to approach the subject vehicle does not change our analysis. Notwithstanding the officers' testimony, the record demonstrates that their initial encounter with Edwards and the occupants in the vehicle was consensual. In making that determination, we look to the circumstances surrounding the officers' initial contact with the defendants.

{¶22} Officer Ester testified that he did not activate his sirens, and when he approached the vehicle he did not have his gun drawn nor was he shouting commands at the defendants. It is established that a police officer's mere approach of a person in a parked car was not a stop or seizure that would trigger Fourth Amendment scrutiny and require reasonable suspicion, when the police did not pull the vehicle over or order the person from his or her vehicle, or activate overhead lights when arriving at the scene of the parked car. *See, e.g., State v. Brock*, 12th Dist. Clermont No. CA97-09-077, 1998 Ohio App. LEXIS 2353, *8 (June 1, 1998).

{¶23} As Officer Ester approached the car to engage its occupants in a consensual encounter, he smelled marijuana. Officer Blackstone also testified that there was a "strong odor of a marijuana-type substance coming from the vehicle," and when he mentioned it to the occupants, Alim, the driver, pointed to his left and responded that "they were just smoking right there."

**{¶24}** Thus, the consensual encounter in this case quickly yielded grounds for reasonable suspicion for an investigative detention and probable cause for the search of the vehicle. Specifically, the following regarding the smell of marijuana is well established:

> [T]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle.

*State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000); *see also State v. Williams*, 8th Dist. Cuyahoga Nos. 92009 and 92010, 2009-Ohio-5553, ¶ 26 ("smell of marijuana emanating from the vehicle justified a search of the vehicle without a warrant based upon the 'plain-smell doctrine'"); *State v. Byers*, 8th Dist. Cuyahoga No. 94922, 2011-Ohio-342, ¶ 16 (the search was supported by probable cause when the police officers discovered that the occupants of the vehicle had been smoking marijuana); *State v. Hopper*, 8th Dist. Cuyahoga Nos. 91269 and 91327, 2009-Ohio-2711, ¶ 20 ("the smell of marijuana gives rise to a reasonable suspicion that the person stopped is engaged in criminal activity").

**{¶25}** Here, both officers Ester and Blackstone testified that they smelled marijuana. Further, Officer Blackstone mentioned the odor to the occupants, and Alim, the driver, pointed to his left and responded that "they were just smoking right there." On this record, therefore, this case is distingushable from *Whitsette*, 8th Dist. Cuyahoga

No. 92566, 2009-Ohio-4373, because the search and seizure did not rest on the anonymous tip.   Rather, after smelling   marijuana and getting confirmation from one in the group of defendants that "they were just smoking right there," the officers had probable cause to justify the search of the defendants and the vehicle.

{¶26} In light of the above, we find the state's sole assignment of error well taken and sustain it.

{¶27} Judgment reversed; case remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR