LARRY A. JONES, SR., J., DISSENTING:
 

 {¶ 31} Respectfully, I dissent. As the majority notes, at a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact.
 
 State v. Oliver
 
 ,
 
 112 Ohio St.3d 447
 
 ,
 
 2007-Ohio-372
 
 ,
 
 860 N.E.2d 1002
 
 , ¶ 1. As such, we are bound to accept those facts as true if they are supported by competent, credible evidence.
 

 Id.
 

 Applying that deferential standard, I would find that the trial court's findings here are supported by competent, credible evidence and, therefore, would affirm its judgment.
 

 {¶ 32} After viewing the dash-camera video of the incident, the trial court found that Kalish had committed a "moving traffic violation" and, therefore, that the stop was permissible. The court noted, however, that although Kalish had violated traffic laws, his driving did not indicate to the court that he was impaired. Rather, the court found that it was "pretty clear he was trying to pass other vehicles[,] but he was never necessarily speeding." The court further found that his response to the officer activating the police lights to stop him was "prompt" and he was "appropriate" and "very safe in pulling over."
 

 {¶ 33} The court noted that once Kalish pulled over, there was "no difficulty with the motor vehicle controls, there was no fumbling for driver's license or registration" and his speech was not slurred, he was not slow to respond, and he did not provide incorrect information or change his answer.
 

 {¶ 34} Officer Suda testified that he could smell alcoholic beverage coming from inside the car, Kalish's face was flushed, and his eyes were bloodshot. Based on these observations, Suda "decided to investigate further by [having Kalish step] out of the car to run standardized field sobriety tests." The trial court acknowledged the officer's testimony about the odor of alcohol coming from the car, and Kalish's bloodshot eyes and flushed skin tone, but did not find it justified the administration of the tests.
 

 {¶ 35} In regard to the odor of alcohol, the court noted that the officer did not testify that he smelled the odor on Kalish's breath or coming from Kalish's person; rather, the officer just testified that it was coming from the vehicle. While I agree with the majority that, because Kalish was the sole occupant of the vehicle, the smell necessarily had to be attributed to him, I note that there was no testimony about the intensity of the odor.
 

 {¶ 36} It is entirely plausible that consuming one alcoholic beverage could cause a person to "smell of alcohol." Thus, it has been held, as the majority notes, that instances where a driver makes de minimis traffic violations (as the trial court here found was the case) and has a slight odor of alcoholic beverage on his or her person, do not give rise to a reasonable and articulable suspicion that the driver is intoxicated.
 
 See
 

 State v. Spillers
 
 , 2d Dist. Darke No. 1504,
 
 2000 WL 299550
 
 , 3, 2000 Ohio App. LEXIS 1151, 8 (Mar. 24, 2000). Thus, without more testimony about the intensity of the odor coming from inside Kalish's vehicle, I would not usurp the trial court's finding.
 

 {¶ 37} Regarding his flushed skin tone, the trial court noted that it viewed Kalish at both the suppression hearing and the hearing announcing its decision, and noted that "his face is flushed the entire time. I think that is his normal skin tone and I don't find that to be a clue." Given that the trial court had the opportunity, on at least two occasions to view Kalish, I would defer to the trial court's finding on this point.
 

 {¶ 38} Thus, the remaining "clue" that Kalish may have been intoxicated was his bloodshot eyes. The trial court noted that the officer did not ask Kalish whether he was tired or what his eyes normally look like. The majority states that it declines to impose such a requirement for OVI traffic encounters. I agree that it is not necessary for the police to make such an inquiry in those instances, but given the totality of the circumstances of this case, I would again defer to the court's decision.
 

 {¶ 39} Moreover, I would not find that the "
 
 Mimms
 
 order" justified administration of the field sobriety tests. Although an officer can order a person to exit a vehicle during a lawful traffic stop without having reasonable suspicion of any further criminal activity under
 
 Mimms
 
 , the trial court found, and I would defer to that finding, that there was nothing suspicious about Kalish's behavior once he was out of his vehicle. Specifically, the court noted he did not have trouble getting out of his vehicle, there was "no swaying or unsteady balance problem, he never leaned on the vehicle or any other object." The court further noted:
 

 regarding the suspect's actions during the exit sequence, there's nothing unusual about that, no angry initial reactions, no inability to follow instructions, he didn't leave his vehicle door open, he didn't leave the vehicle in gear; he didn't climb out. He got up. He didn't lean against the vehicle or keep his hands on the vehicle for balance. There were no other unusual reactions.
 

 {¶ 40} And even though Kalish, once out of his vehicle, admitted that he had been at a Cleveland Indians game and had consumed alcohol there, Officer Suda testified that it was his intention to subject Kalish to field sobriety tests when he ordered him out his vehicle,
 
 before
 
 Kalish even told him he had drank alcohol at the Indians game.
 

 {¶ 41} Thus, in light of the above, although I believe the stop was lawful, I would defer to the trial court's findings that the police exceeded the scope of the stop when they subjected Kalish to field sobriety tests because the findings are supported by some competent, credible evidence. I therefore dissent and would affirm the trial court's judgment.