[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bembry,* Slip Opinion No. 2017-Ohio-8114.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8114

THE STATE OF OHIO, APPELLEE, *v*. BEMBRY ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bembry,* Slip Opinion No. 2017-Ohio-8114.]**

*Criminal law—Once a warrant has been issued, the exclusion of evidence is not the appropriate remedy under Article I, Section 14 of the Ohio Constitution for a violation of the knock-and-announce statute, R.C. 2935.12.*

(No. 2016-0238—Submitted March 1, 2017—Decided October 10, 2017.)

APPEAL from the Court of Appeals for Mahoning County, Nos. 14 MA 51 and 14 MA 52, 2015-Ohio-5598.

_____

**O'NEILL, J.**

{¶ 1} In this appeal, we take up whether the exclusionary rule is the appropriate remedy when police executing a valid search warrant violate the requirements of the knock-and-announce statute, R.C. 2935.12. We conclude that the exclusion of evidence is not the proper remedy for a violation of the knock-and-

announce statute. We therefore affirm the judgment of the Seventh District Court of Appeals and remand the cause to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} Boardman police supervised two "controlled buys" in October 2012, during which a confidential informant purchased heroin from appellant Harsimran Singh near the apartment where Singh lived. Based upon the two incidents during which Singh sold heroin and upon his prior arrest for a crime of drug abuse, Boardman police sought and acquired a search warrant for Singh's apartment.

{¶ 3} Singh lived with his girlfriend, appellant Sherri A. Bembry. Seven Boardman police officers executed the warrant at her apartment at 8:30 a.m. on November 2, 2012. Officers knocked several times. Thirty seconds after police knocked on the door, someone in the apartment asked, "[W]ho is it?" An officer replied, "Police. Open the door."

{¶ 4} After more time went by, police officers forced the door open with a battering ram. Detective Michael Dado claimed that the officers waited 15 seconds to enter the apartment after announcing their presence. Singh claimed that the entry was more immediate and that he was not sure that it was the police at his door. Detective Dado admitted that the police never stated their purpose, which was to execute a search warrant. Singh was taken from the apartment and thrown on the ground.

{¶ 5} The search turned up contraband in the form of drugs, instruments of drug trafficking, and a stolen weapon. Officers found marijuana, two digital scales coated with drug residue in the bedroom, and eight bindles of heroin packaged for sale in a dresser. They found a .38-caliber pistol that was registered in the Law Enforcement Automated Data System database as a stolen weapon. And they found a semiautomatic AK-47 and two loaded magazines under the mattress, although the state ultimately charged no crimes regarding the rifle. After the search, officers learned that three children under the age of seven lived in a nearby apartment.

**{¶ 6}** A grand jury indicted Singh on one count of trafficking in heroin in the vicinity of a juvenile, R.C. 2925.03(A)(2) and (C)(6)(b); one count of possession of a controlled substance, R.C. 2925.11(A) and (C)(6)(a); and one count of receiving a stolen firearm, R.C. 2913.51(A) and (C). Bembry was indicted on one count of permitting drug abuse, R.C. 2925.13(B) and (C)(1) and (3).

**{¶ 7}** Bembry and Singh jointly moved to suppress all evidence obtained during the search. They claimed that "the search itself did not comport with the reasonableness requirement" of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. The state responded that the suppression of evidence is not the appropriate remedy when police executing a search warrant fail to comply with the knock-and-announce statute, R.C. 2935.12. The trial court granted the motion to suppress, finding that the Boardman police had violated R.C. 2935.12 without any exigent circumstances justifying the violation.

**{¶ 8}** The state appealed pursuant to R.C. 2945.67(A), raising the following assignment of error: " 'The trial court should have denied defendants' motion to suppress, because the law is well-settled that the exclusionary rule does not apply to violations of the knock-and-announce rule.' " 2015-Ohio-5598, ¶ 7. The court of appeals explained that the facts of Bembry and Singh's case were "virtually identical" to the facts in *Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159, 156 L.Ed.2d 56 (2006). 2015-Ohio-5598, at ¶ 11. Applying the logic of *Hudson*, the court of appeals reversed the judgment of the trial court, vacated the suppression order, and remanded the matter. 2015-Ohio-5598, at ¶ 11-19.

**{¶ 9}** Bembry and Singh appealed, and we accepted jurisdiction over the following proposition of law: "The exclusionary rule is the appropriate remedy under Article I, Section 14 of the Ohio Constitution for a violation of R.C. 2935.12." *See* 145 Ohio St.3d 1470, 2016-Ohio-3028, 49 N.E.3d 1313.

## DISCUSSION

{¶ 10} The court of appeals made no mention of the independent protection provided by Article I, Section 14 of the Ohio Constitution. Generally, we will not consider any issue "that was not raised in any way in the Court of Appeals and was not considered or decided by that court." *Toledo v. Reasonover*, 5 Ohio St.2d 22, 213 N.E.2d 179 (1965), paragraph two of the syllabus. We have justified this rule in no uncertain terms:

> Any other rule would relieve counsel from any duty or responsibility to the court, and place the entire responsibility upon the trial court to give faultless instructions upon every possible feature of the case, thereby disregarding entirely the true relation of court and counsel, which enjoins upon counsel the duty to exercise diligence and to aid the court, rather than by silence mislead the court into commission of error.

*State v. Driscoll*, 106 Ohio St. 33, 39, 138 N.E. 376 (1922). It is therefore appropriate to address whether the foregoing proposition of law is properly before us before reaching the merits.

{¶ 11} The record before us shows that the issue was raised at the trial level and fully briefed at the appellate level. Bembry and Singh devoted much of their brief below to this court's decisions holding that in some circumstances, Article I, Section 14 of the Ohio Constitution affords greater protection than the Fourth Amendment; to the decisions of other state courts regarding suppression as a remedy for knock-and-announce violations; and to the significance of the General Assembly's knock-and-announce enactment, R.C. 2935.12. They submitted their brief more than a year before the court of appeals issued its judgment. Although the decision of the court of appeals does not offer any discussion regarding Article

I, Section 14 of the Ohio Constitution, it appears from the record that the court of appeals considered and rejected the arguments asserted in Bembry and Singh's only brief below. For those reasons, we hold that Bembry and Singh adequately preserved their proposition of law.

{¶ 12} We find further support from the Rules of Appellate Procedure, which permit an appellee "who does not seek to change the judgment or order" of a lower court to defend that judgment, even "on a ground other than that relied on by the trial court," without "[filing] a notice of cross appeal or [raising] a cross-assignment of error." App.R. 3(C)(2). Bembry and Singh therefore met their duty to raise the issue to the court of appeals by briefing it there in detail. Accordingly, we will proceed to the merits of this appeal presuming that the lower court's decision stands for the proposition that the United States Supreme Court's decision in *Hudson* governs the appropriate remedy for a violation of the knock-and-announce principle under both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

{¶ 13} Turning to the proposition at hand, we must answer whether Ohio's independent provision of the "right of the people to be secure * * * against unreasonable searches and seizures" in Ohio Constitution, Article I, Section 14 requires the suppression of evidence when police fail to comply with the knock-and-announce principle while executing a valid search warrant. We hold that it does not.

## THE EXCLUSIONARY RULE

{¶ 14} The exclusionary rule is a fairly recent legal development, and its rise is inextricably entwined with the incorporation of the Bill of Rights within the Fourteenth Amendment. More than 100 years ago, the United States Supreme Court recognized the federal suppression remedy for warrantless searches and seizures, in *Weeks v. United States*, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The court held that a federal district court in Missouri committed error

when it denied a criminal defendant's pretrial application to return seized property on the grounds that the property was taken from his home during a warrantless search. *Id.*

{¶ 15} Prior to 1936, Ohio courts sometimes excluded evidence resulting from search-and-seizure violations in criminal investigations, but application of the exclusion remedy was inconsistent. *See State v. Lindway*, 131 Ohio St. 166, 172-180, 2 N.E.2d 490 (1936). When this court squarely took up whether illegally obtained evidence should be barred from trial, it noted that courts in the majority of other states had "[held] such evidence admissible on the basis that if it is pertinent to the main issue in the case, a court need not concern itself with the collateral issue of how it was gotten." *Id.* at 173. Joining the courts of those states, this court held that the Fourth Amendment had "no application to the various states" and that "[i]n a criminal case, evidence obtained by an unlawful search is not thereby rendered inadmissible." *Id.* at paragraphs one and four of the syllabus. This court later reserved the exclusion remedy in Ohio courts to evidence produced by " ' "brutal" or "offensive" ' physical force" violating the Fourteenth Amendment. *State v. Mapp*, 170 Ohio St. 427, 430-431, 166 N.E.2d 387 (1960), *rev'd sub nom. Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), quoting *Breithaupt v. Abram*, 352 U.S. 432, 436, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957).

{¶ 16} In deciding *State v. Mapp*, this court relied on *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). Justice Frankfurter wrote for the court in *Wolf* that "[t]he notion that the "due process of law" guaranteed by the Fourteenth Amendment is shorthand for the first eight amendments of the Constitution and thereby incorporates them has been rejected by this Court again and again, after impressive consideration. * * * The issue is closed." *Id.* at 26. On that basis, the United States Supreme Court held that the Fourth Amendment exclusionary rule announced in *Weeks* required the exclusion of "evidence obtained by an unreasonable search and seizure" from a federal court but that the Fourteenth

6

Amendment did not require the same remedy for the same illegally obtained evidence in "a prosecution in a State court for a State crime." *Id*. at 34. On the one hand, the court was able to recognize that "one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society" and "therefore implicit in 'the concept of ordered liberty' and as such enforceable against the States through the Due Process Clause." *Id*. at 27-28. But on the other hand, the court was unwilling to choose a remedy on behalf of every jurisdiction in our nation because the law in the various states had already developed a number of mechanisms besides suppression to protect privacy in the home. *Id*. at 28-33; *id*. at 30, fn. 1. As this court was not bound to impose in a state case the specific remedy the Supreme Court determined is required by the Fourth Amendment, it chose to retain the rule of *Lindway* that "evidence obtained by an unlawful search and seizure is admissible in a criminal prosecution." *State v. Mapp* at 430.

{¶ 17} That ruling did not stand for long. In *Mapp v. Ohio*, the United States Supreme Court overruled its decision in *Wolf* and reversed this court's decision in *State v. Mapp*. In overruling *Wolf*, the court adopted the reasoning of the California Supreme Court that the "other remedies" developed by the states for protection of the right to privacy "[had] been worthless and futile." *Mapp v. Ohio* at 652, citing *People v. Cahan*, 44 Cal.2d 434, 282 P.2d 905 (1955). Left with only inadequate alternative remedies, the court held that the Fourth Amendment's exclusionary remedy must be "enforceable against the States through the Due Process Clause of the Fourteenth [Amendment]" just the same as the Fourth Amendment's right to privacy against arbitrary intrusion by the police. *Id*. at 655. The court remarked:

> Were it otherwise, then just as without the *Weeks* rule the assurance
> against unreasonable federal searches and seizures would be "a form

of words", valueless and undeserving of mention in a perpetual charter of inestimable human liberties, so too, without that rule the freedom from state invasions of privacy would be so ephemeral and so neatly severed from its conceptual nexus with the freedom from all brutish means of coercing evidence as not to merit this Court's high regard as a freedom "implicit in the concept of ordered liberty."

*Id*. Put most simply, there can be no meaningful right to privacy in the home if the right has no meaningful remedy. And so, through operation of the Fourteenth Amendment, the Fourth Amendment applies in Ohio courts, it protects our right to privacy, and it may require the suppression of evidence gained in violation of that right.

{¶ 18} Although the exclusionary rule is undoubtedly available to remedy a violation of the Fourth Amendment, it is an entirely separate question "[w]hether the exclusionary sanction is appropriately imposed in a particular case." *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The exclusionary rule is "applicable only where its deterrence benefits outweigh its 'substantial social costs.' " *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998), quoting *Leon* at 907. Those social costs "sometimes include setting the guilty free and the dangerous at large." *Hudson*, 547 U.S. at 591, 126 S.Ct. 2159, 156 L.Ed.2d 56. At the very least, exclusion prevents "consideration of reliable, probative evidence," which "undeniably detracts from the truthfinding process." *Scott* at 364. And so, before a court sanctions the exclusion of evidence, it must consider whether exclusion will actually remedy the wrong and deter future wrongdoing.

*THE KNOCK-AND-ANNOUNCE PRINCIPLE*

{¶ 19} The knock-and-announce principle is much older than the exclusionary rule, finding its roots in the ancient common law. *Wilson v. Arkansas*,

514 U.S. 927, 932, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), fn. 2. The United States Supreme Court has explained that by virtue of its place in the common law before and during the founding era, the knock-and-announce principle "is an element of the reasonableness inquiry under the Fourth Amendment." *Id*. at 934. In Ohio, the principle was more recently codified in R.C. 2935.12. *State v. Oliver*, 112 Ohio St.3d 447, 2007-Ohio-372, 860 N.E.2d 1002, ¶ 9. The principle requires "police officers executing a search warrant at a residence to first knock on the door, announce their purpose, and identify themselves before they forcibly enter the home."[1] *Id*. at ¶ 9; *accord Wilson* at 931-932. Ohio's codified version of the knock-and-announce principle provides the same basic rule: police executing a warrant must give notice of their presence and purpose and may enter a home only after refusal of admission. R.C. 2935.12(A) ("when executing a search warrant, the peace officer * * * executing the warrant * * * may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to * * * execute the warrant * * * he is refused admittance"). The knock-and-announce principle becomes relevant only after a warrant has issued, for if a warrant has not issued, a search or seizure inside the home is "presumptively unreasonable" whether or not police give notice of their presence and purpose. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *see also State v. Carr*, 2d Dist. Montgomery No. 19121, 2002-Ohio-4201, ¶ 13 ("The statute sets forth requirements to be followed when police are entering a residence to execute a warrant. The police in this case were not executing a warrant. Therefore, we conclude that R.C. 2935.12 is inapplicable to this case").

{¶ 20} Despite the fact that the knock-and-announce principle is "an element of the reasonableness inquiry under the Fourth Amendment," *Wilson* at

---

[1] Although there are exceptions to the knock-and-announce rule, they are not relevant here, because the state has admitted that the officers did not comply with the rule while conducting their search. *See Hudson* at 589-590.

934, the United States Supreme Court held in *Hudson* that suppression is categorically the wrong remedy when police armed with a valid warrant violate the knock-and-announce principle. *Hudson* at 594, 599. The court gave two related reasons why "the massive remedy of suppressing evidence of guilt is unjustified." *Id.* at 599.

{¶ 21} First, the knock-and-announce principle protects different interests than those protected by the warrant requirement and vindicated by the suppression remedy. *Id.* at 590-594. The warrant requirement protects the privacy of one's home and its contents, while the suppression of evidence found during a warrantless search of the home appropriately restores the private nature of that evidence. *Id.* at 593. The knock-and-announce principle, however, protects "human life and limb" placed in jeopardy by "supposed self-defense by the surprised resident," assures "the protection of property" that may be destroyed during a forced entry, and safeguards "elements of privacy and dignity that can be destroyed by a sudden entrance." *Id.* at 594. Suppressing evidence found during a warranted search of a home will not heal a physical injury, fix a door, or undo the shock of embarrassment when police enter without notice of their presence and purpose.

{¶ 22} Second, suppression will not effectively deter knock-and-announce violations. *Id.* at 594-596. There is minimal incentive to violate the knock-and-announce principle in the first place, and the rule gives way in the name of safety, investigative necessity, or futility. *Id.* at 596. There is a danger that the risk of suppression would dissuade police from risking a knock-and-announce violation in exigent circumstances, when they would have the benefit of an exception to the rule anyway. *Id.* at 594-596.

*ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION*

{¶ 23} Shortly after the United States Supreme Court decided *Hudson*, we heard oral argument in *Oliver*, 112 Ohio St.3d 447, 2007-Ohio-372, 860 N.E.2d 1002. *Id.* at ¶ 11. In *Oliver*, we considered the state's appeal from an order granting

10

a motion to suppress evidence on the basis of a knock-and-announce violation. *Id.* at ¶ 6-10. We noted in our decision that "*Hudson* present[ed] a significant and arguably new interpretation of the exclusionary rule," and we remanded the matter for the trial court to consider *Hudson* in the first instance. *Id.* at ¶ 13. In *Oliver*, we did not comment on the question at issue in this matter: whether Article I, Section 14 of the Ohio Constitution provides greater protection from knock-and-announce violations than the Fourth Amendment as interpreted in *Hudson*. *See id.* at ¶ 13.

{¶ 24} Now that the precise question has percolated through the lower courts in the wake of *Hudson*, we take it up today. We are, of course, bound to treat the exclusionary rule developed in *Weeks* and *Mapp v. Ohio* and the knock-and-announce principle developed in *Wilson* and *Hudson* as "a floor below which state court decisions may not fall." *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. We will generally "harmonize our interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment, *unless there are persuasive reasons to find otherwise.*" (Emphasis added.) *State v. Robinette*, 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997). Given "persuasive reasons" to find more expansive constitutional protections within the Ohio Constitution, we are entitled to do so. *Id*; *see also State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, ¶ 20 (plurality opinion).

{¶ 25} Bembry and Singh advance three arguments in support of more expansive constitutional protection under Article I, Section 14 of the Ohio Constitution than under the Fourth Amendment for those who suffer a knock-and-announce violation. First, they offer several trial- and appellate-court decisions that sanctioned suppression of evidence as a remedy for violating the knock-and-announce principle and that predate the United States Supreme Court's decision in *Wilson*. *See State v. Vuin*, 89 Ohio Law Abs. 193, 198-199, 185 N.E.2d 506 (C.P.1962); *State v. Furry*, 31 Ohio App.2d 107, 112-113, 117, 286 N.E.2d 301

(6th Dist.1971); *State v. DeFiore*, 64 Ohio App.2d 115, 119, 411 N.E.2d 837 (1st Dist.1979); *State v. Valentine*, 74 Ohio App.3d 110, 113, 118, 598 N.E.2d 82 (4th Dist.1991). Singh and Bembry argue that these decisions prove that Article I, Section 14 of the Ohio Constitution required suppression as a remedy for a knock-and-announce violation because the United States Supreme Court had not yet formally recognized in *Wilson* that the knock-and-announce principle comprised part of the Fourth Amendment reasonableness inquiry.

{¶ 26} We are never bound by prior decisions of inferior courts. But these decisions fail even as persuasive authority for the argument advanced by Bembry and Singh. Each of the decisions offered by Bembry and Singh expressly rely upon the Fourth Amendment as the constitutional authority for suppressing evidence or affirming an order suppressing evidence. *Vuin* at 195, 200; *Furry* at 111-112; *Defiore* at 119-120; *Valentine* at 113-114. To the extent that any of these decisions mention Article I, Section 14 of the Ohio Constitution, the courts said nothing about whether that provision offers any greater protection than the Fourth Amendment. *Vuin* at 195, 200.

{¶ 27} Second, Bembry and Singh point to our decisions that have extended the protections of Article I, Section 14 of the Ohio Constitution beyond the protections of the Fourth Amendment in cases where police have stopped or arrested an individual for a minor misdemeanor without a warrant. *State v. Jones*, 88 Ohio St.3d 430, 727 N.E.2d 886 (2000); *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175 ("*Brown I*"); *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496 ("*Brown II*"). They argue that there is no reason not to apply the reasoning used in those cases to the question presented in this one.

{¶ 28} We are not convinced. *Jones*, *Brown I*, and *Brown II* are all distinguishable in an important way from the present case because they all turned in part on the lack of a valid warrant. When police stop or arrest an individual without a warrant, the individual has liberty and privacy interests in his or her

12

person and property prior to the arrest. *See Jones* at 438-439. We held that the arrests in *Jones* and *Brown I* were unreasonable in light of the less serious minor-misdemeanor violations at issue, and we restored the privacy the police violated during the arrests of the individuals in those cases by affirming orders to suppress evidence. *Jones* at 440-441; *Brown I* at ¶ 25. In *Brown II*, we held that the state's interest in conducting a traffic stop for a minor misdemeanor outside of a police officer's territorial jurisdiction was "outweighed by the intrusion upon the individual's liberty and *privacy* that necessarily arises out of the stop." (Emphasis added.) *Id*. at ¶ 25. Accordingly we affirmed the order of the court of appeals holding that suppression was required. *Id*. at ¶ 8, 26-27. In *Jones*, *Brown I*, and *Brown II*, suppression was the appropriate remedy because there was a privacy interest to vindicate. In the present case, a magistrate decided to subject the contents of Bembry and Singh's home to state scrutiny by issuing a warrant before the search occurred. Because the warrant issued, Bembry and Singh's privacy interest in their apartment abated within the scope of the search warrant. It makes no sense then to restore the privacy interest that existed prior to the issuance of the warrant by suppressing evidence merely because police executed the *valid* warrant in an unlawful manner.

**{¶ 29}** Finally, Bembry and Singh argue that pursuant to the discussion of the "new federalism" in *Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, at ¶ 14-22, we should take the decisions of other state courts as persuasive authority on the question at hand. The authorities Bembry and Singh offer are simply not persuasive. Several of these decisions provide for suppression as a remedy for a violation of another state's knock-and-announce statute or a criminal rule rather than a constitutional provision. *State v. Cable*, 51 So.3d 434, 441-443 (Fla.2010); *Berumen v. State*, 182 P.3d 635, 641-642 (Alaska 2008); *Commonwealth v. Chambers*, 528 Pa. 403, 410, 598 A.2d 539 (1991). The plain language of R.C. 2935.12 provides no remedy for its violation, and we cannot

"brazenly ignore the unambiguous language of a statute" simply because another state would do so under its own law. *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8. In still other states, the law in this area is as undeveloped as it is in Ohio. *E.g.*, *State v. Jean-Paul*, 2013-NMCA-032, 295 P.3d 1072, 1077 ("Our Supreme Court has not had the occasion since *Hudson* to reconsider [*State v. Attaway*, 117 N.M. 141, 1994-NMSC-011, 870 P.2d 103] or the application of the exclusionary rule for knock-and-announce violations under the state constitution. * * * Therefore, *Attaway* controls, and the remedy for any violation of [the New Mexico Constitution's] knock-and-announce requirement continues to be suppression of the evidence").

{¶ 30} We find the United States Supreme Court's reasoning in *Hudson* to be far more persuasive than the arguments made by Bembry and Singh. The knock-and-announce principle applies only when police execute a valid warrant. To acquire a valid warrant, police must first convince a neutral magistrate that there is probable cause to believe that a crime has been committed, sufficient to justify pulling aside the veil of privacy from the contents of a home. It makes fundamental sense that we would not restore privacy to the contents of a home to remedy the violation of a rule that applies only after the interest in privacy in the home has been overridden. To do so would be to make an end run around the authority of the magistrate that issued the warrant. There is a basic conceptual disconnect between the interests protected by the knock-and-announce principle and those vindicated by the suppression remedy. For the foregoing reasons, we are persuaded to "harmonize our interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment," *Robinette*, 80 Ohio St.3d at 239, 685 N.E.2d 762, with regard to the appropriate remedy for a violation of the knock-and-announce principle as codified in R.C. 2935.12.

## CONCLUSION

{¶ 31} Accordingly, we hold that once a warrant has been issued, the exclusionary rule is not the appropriate remedy under Article I, Section 14 of the Ohio Constitution for a violation of R.C. 2935.12.

Judgment affirmed
and cause remanded.

O'CONNOR, C.J., and KENNEDY and DEWINE, JJ., concur.

O'DONNELL and FISCHER, JJ., concur in judgment only.

FRENCH, J., dissents and would dismiss the cause as improvidently granted.

_____

Paul J. Gains, Mahoning County Prosecuting Attorney, and Ralph M. Rivera, Assistant Prosecuting Attorney, for appellee.

Louis M. Defabio, for appellants.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Peter T. Reed and Hannah C. Wilson, Deputy Solicitors, urging affirmance for amicus curiae Ohio Attorney General Michael DeWine.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Franklin County Prosecutor Ron O'Brien.

Timothy Young, Ohio Public Defender, and Katherine Ross-Kinzie, Assistant Public Defender, urging reversal for amicus curiae Ohio Public Defender.

_____