[Cite as *State v. Pitts*, 2020-Ohio-2655.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-18-1242

     Appellee                                    Trial Court Nos. CR0201702414
                                                     CR0201703126
v.

Ronald Dewayne Pitts                          **DECISION AND JUDGMENT**

     Appellant                                   Decided:  April 24, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

James R. Willis, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Ronald Pitts, appeals the judgments of the Lucas County Court of Common Pleas, following a jury trial, convicting him of multiple drug offenses in two different cases, and sentencing him to a total prison term of 22 years.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} Generally, this case involves evidence of drug trafficking that was discovered at three residences associated with appellant. On March 28, 2017, a search warrant was executed at 2820 Airport Highway, Apt. M, resulting in the discovery of significant amounts of drugs and drug contraband. Based upon information gathered from that search, and subsequent information collected by the investigating detective, a second search warrant was executed on March 28, 2017, at 1828 Dunham Street. Again, significant amounts of drugs and drug contraband were discovered.

{¶ 3} Stemming from these incidents, the Lucas County Grand Jury returned a seven-count indictment against appellant and his co-defendant, Megan Weemes, in case No. CR0201702414. The indictment charged appellant with two counts of trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(g), felonies of the first degree, with major drug offender specifications under R.C. 2941.1410; two counts of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(f), felonies of the first degree, with major drug offender specifications under R.C. 2941.1410; one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(c), a felony of the fourth degree; one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(d), a felony of the third degree; and one count of possession of marijuana in violation of R.C. 2925.11(A) and (C)(3)(d), a felony of the third degree.

{¶ 4} While that case was pending, on September 29, 2017, two search warrants were simultaneously executed at 2820 Airport Highway, Apt. M and Apt. L. Significant

2.

amounts of drugs and drug contraband were once again discovered. Based upon these incidents, the Lucas County Grand Jury returned a six-count indictment against appellant in case No. CR0201703126.[1] The indictment charged appellant with one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(g), a felony of the first degree, with a major drug offender specification under R.C. 2941.1410; one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(f), a felony of the first degree, with a major drug offender specification under R.C. 2941.1410; one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(c), a felony of the fourth degree; one count of possession of marijuana in violation of R.C. 2925.11(A) and (C)(3)(c), a felony of the fifth degree; one count of obstructing official business in violation of R.C. 2921.31(A) and (B), a second-degree misdemeanor; and one count of illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1) and (F), a fourth-degree misdemeanor. The misdemeanor charges were later dismissed by the state.

{¶ 5} Before the trial, appellant filed several motions, including a motion pursuant to R.C. 2933.27 to have certain seized items returned, a motion for disclosure of confidential informants, a motion for an order requiring the alleged informant to submit to an "in camera" examination, and a motion to suppress evidence relating to the

---

[1] Several of the counts also applied to appellant's co-defendants, Megan Weemes and Reco Nelson.

3.

March 28, 2017 searches. Those motions came before the court for a hearing on May 24, 2018.

{¶ 6} At the May 24, 2018 hearing, appellant advanced the argument that Toledo Police Detective Brooke Janowiecki lied when she submitted her affidavit in support of a search warrant relative to the first March 28, 2017 incident. Janowiecki stated that she received information from a reliable confidential source that appellant was processing and selling drugs at 2820 Airport Highway, Apt. M. Janowiecki conducted surveillance and observed foot traffic consistent with drug activity. She then conducted two controlled buys, the first on February 27, 2017, and the second on March 26, 2017. At each controlled buy, Janowiecki observed appellant meeting the confidential informant at the door, and allowing the informant into the apartment. The confidential informant then returned to Janowiecki with a substance that field-tested positive for cocaine. Notably, Janowiecki did not document her surveillance, and reports relating to the controlled buys were not disclosed to appellant until during the trial. Appellant argued that Janowiecki created the story out of whole cloth, that there was no foot traffic, that appellant never sold drugs, and that there was no confidential informant. In support, appellant submitted his sworn affidavit categorically denying that any of the described conduct occurred, and outright accusing Janowiecki of lying.

{¶ 7} Following the hearing, the trial court entered its written judgments on June 22, 2018, denying appellant's motions. The trial court found that appellant had failed to make a substantial preliminary showing that a false statement was included in

4.

the warrant affidavit knowingly, intentionally, or with reckless disregard of the truth. Further, the court found that any information from the confidential informant would be irrelevant because appellant was not charged for any of the conduct he was alleged to have committed during the controlled buys. Finally, the court found that Janowiecki's affidavits provided sufficient probable cause to support the search warrants.

{¶ 8} As to appellant's motion under R.C. 2933.27 to have certain seized items returned, the trial court found that the state had certified that the items seized are to be used as evidence against appellant, and that some of the items are subject to civil forfeiture actions that have been consolidated with the criminal cases. Thus, the trial court denied appellant's motion to return the property.

{¶ 9} Thereafter, the matter proceeded to a six-day jury trial beginning on October 15, 2018. Only three witnesses testified during the trial.

{¶ 10} The first witness to testify was Janowiecki. Janowiecki testified that she conducted surveillance at 2820 Airport Highway, Apt. M. for a little over two months between February and March 2017. During her surveillance, she observed appellant coming and going to and from the residence. She observed appellant unlock the door to the residence and enter. While at the residence, she observed people approach the apartment to meet with appellant for a very short time, or to just shake hands with him, and then leave. Janowiecki testified that this behavior was indicative of drug trafficking.

{¶ 11} Janowiecki further testified that she made contact with a few of the people who she had observed leaving 2820 Airport Highway, Apt. M, and that she recovered

5.

cocaine from them. Janowiecki explained that she did not charge them with crimes, however, because she did not want to alert the dealer. Janowiecki also explained that she did not prepare any police reports related to those stops. Notably, these stops are different than the controlled buys that were disclosed in the search warrant. Janowiecki did not provide any testimony as to the controlled buys.

{¶ 12} Janowiecki then testified regarding the March 28, 2017 execution of the search warrant on 2820 Airport Highway, Apt. M. Janowiecki testified that when the police entered the apartment, they found appellant on the couch. The search of the apartment revealed cocaine that was arranged in bags by amount. Also in the apartment was a bag of marijuana, a digital scale, over $7,000 in cash, appellant's identification, and baking soda, which Janowiecki testified was a mixing agent for the cocaine.

{¶ 13} Janowiecki also testified that in the weeks and months prior to obtaining the initial search warrant for 2820 Airport Highway, Apt. M, she conducted mobile surveillance of appellant, and observed him consistently travelling to the location at 1828 Dunham Street. In the hours after the search warrant was executed at 2820 Airport Highway, Apt. M, Janowiecki listened to phone calls that appellant made from the jail to Weemes. Janowiecki interpreted those phone calls to be instructing Weemes to clean out the house at 1828 Dunham Street. Janowiecki then obtained a warrant to search 1828 Dunham Street.

{¶ 14} Later in the day, on March 28, 2017, the search warrant was executed. Janowiecki testified that the search of 1828 Dunham Street revealed cocaine packaged in

6.

heat-sealed bags by weight, which Janowiecki testified was indicative of trafficking in that it was set up to be given to someone else to sell. Also recovered from the search was a large amount of marijuana, a loaded handgun, a digital scale, various pieces of mail addressed to appellant, photographs of appellant, approximately $17,000 in cash, and valuable coins.

{¶ 15} The next witness to testify for the state was Toledo Police Detective Justin Pritchard. Pritchard first testified that he assisted Janowiecki with the searches conducted on March 28, 2017. Pritchard stated that when he entered apartment M, he could detect an odor of cocaine, which he said was unusual because humans typically cannot smell cocaine unless they are right next to it. Pritchard testified that he located the cocaine hidden in a speaker box in a closet. According to Pritchard, the amount of cocaine was greater than what would be expected for personal use.

{¶ 16} Pritchard next testified that when he searched the residence at 1828 Dunham Street, he recovered an amount of cocaine that was more than some detectives ever see in their career.

{¶ 17} Pritchard then testified regarding a second investigation that began in July 2017. As part of that investigation, Pritchard began conducting surveillance on 2820 Airport Highway, Apts. M and L. During his surveillance, Pritchard observed heavy foot traffic to both apartments, which he described was almost like a carryout where someone would go in and out or stay for only a short period of time. On a couple of occasions, Pritchard orchestrated a stop of the individuals that he observed briefly

7.

entering apartments M and L. On one occasion, the stopped individual possessed cocaine. On another occasion, the individual possessed marijuana. Pritchard testified that both drugs were packaged as if it was a "fresh buy."

{¶ 18} Pritchard further observed appellant and the other co-defendants going in and out of the apartments. Pritchard testified that it was as if appellant and Weemes were reporting for a job, where they would arrive at apartment M in the morning and then leave in the evening.

{¶ 19} Pritchard testified that search warrants were obtained and executed for apartments M and L on September 29, 2017. When officers entered apartment M, appellant was present. The search of apartment M recovered a large amount of marijuana, one or two digital scales, several thousand sandwich bags, eleven cell phones, and mail sent to appellant at that address. In addition, there was approximately $18,000 dollars mostly hidden in DVD cases, $14,000 of which was in $20 dollar bills. On appellant's person was a large amount of narcotics, cash, multiple cell phones, and a lanyard that contained keys, one of which was used to unlock apartment L.

{¶ 20} In apartment L, Pritchard found a metal trunk that contained half a kilogram of cocaine. In addition, Pritchard found smaller amounts of crack cocaine and marijuana in sandwich bags that had been knotted and cut, as well as two cell phones, more sandwich baggies, ammunition, a semi-automatic handgun, and a digital scale. Pritchard testified that some of the baggies found in apartment L had their corners torn

8.

off, which indicated drug trafficking. Pritchard explained that the drugs are placed into a corner of the baggie, which is then knotted and tied and sold to the user.

{¶ 21} Lastly, Pritchard testified to lab reports that were stipulated to by appellant. As to the March 28, 2017 search of 2820 Airport Highway, Apt. M, the drugs seized were 3.49 grams of crack cocaine, 275.34 grams of cocaine, and 720.75 grams of marijuana. As to the March 28, 2017 search of 1828 Dunham Street, the drugs seized were 1,150.93 grams of cocaine, and 1,336.7 grams of marijuana. Pritchard estimated that the street value of just the cocaine was over $200,000. As to the September 29, 2017 search of 2820 Airport Highway, Apt. M, the drugs seized were 247.94 grams of marijuana. Finally, as to the September 29, 2017 search of 2820 Airport Highway, Apt. L., the drugs seized were 542.4 grams of cocaine, 2.66 grams of marijuana, and 3.57 grams of crack cocaine.

{¶ 22} The final witness to testify was Toledo Police Detective Kenneth Heban. Heban testified that during the execution of the September 29, 2017 search warrants, he removed the lock from apartment L and verified that it opened with one of the keys on appellant's keychain.

{¶ 23} The parties then made their closing arguments, during which appellant admitted that he possessed the drugs found in the various locations. After deliberations, the jury returned a verdict of guilty on all counts.

{¶ 24} Sentencing was held on October 31, 2018, at which appellant was sentenced to 11 years in prison in case No. CR0201702414, and 11 years in prison in case

9.

No. CR0201703126.  The trial court ordered those sentences to be served consecutively for a total prison term of 22 years.

## II.  Assignments of Error

{¶ 25} Appellant has timely appealed his judgments of conviction, and now asserts eight assignments of error for our review:

1.  The court erred when it denied the defense's motion to suppress and thus failed to suppress the plethora of evidence seized in violation of rights guaranteed the accused by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

2.  The court erred, and abused its discretion, and for sure violated due process when it not only failed to conduct an evidentiary hearing, but when it failed to make the essential finding (required to be made in the wake of its resolution of our motion filed under favor of R.C. of Ohio §2933.27 and Rule 12(F), Ohio Rules of Criminal Procedure).

3.  Given *Franks v. Delaware* requires that an evidentiary hearing is constitutionally required where the defendant makes a sufficient showing that "deliberate falsehood[s]" were willfully included in the search warrant affidavits, it inexorably follows:  the court erred, and due process was manifestly and indisputably denied, when the court failed to conduct an appropriate *Franks* hearing and failed to make the findings required by our Rule 12(F).

4. Given the very specific trafficking charges (made in the indictment), the argument that (trafficking) could be proven by evidence that showed undocumented sightings of what was said to be a pattern of conducting drug transactions (had between the occupants of these premises and others) as was argued by counsel for the state cannot be defended in law, logic, or commonsense.

5. The court erred when it denied the motion for a mistrial.

6. Given there was absolutely no proof (none whatsoever) placed before the jury that showed any type of illegal involvement, or connection, existed between any of the non-contraband items seized during these searches, it follows the court erred when it denied the defendant's various motions.

7. Given a prosecutor is ethically barred from misleading the jury in his summation, it follows such occurs when and where (as here) he deliberately and falsely insinuates to them in a way that misleads the jury by misdescribing (sic) the offense as it was described to them in the indictment.

8. Where, as here, an indictment is constructively amended by prosecution evidence that is wholly outside the proper scope of the indictment and the charge made therein; and the prosecutors argue such evidence would suffice for a conviction, the accused's Fifth Amendment

11.

right to a grand jury indictment and to due process are offended and any convictions in its wake must be reversed.

### III. Analysis

{¶ 26} Appellant's brief contains a hodgepodge of arguments that we will endeavor to address in a comprehensible fashion.

### A. Appellant's First and Third Assignments of Error

{¶ 27} In his first and third assignments of error, appellant makes references to *Franks* and *Brady* violations, and even accuses the prosecution of committing federal crimes in covering up lies. Appellant believes that because Janowiecki did not prepare any reports and documents pertaining to the confidential informant, surveillance, controlled buys, or stops of people who had entered and exited 2820 Airport Highway, Apt. M, Janowiecki must have been lying about those events—which she included in her affidavit in support of the March 28, 2017 search warrant. He believes that he is entitled to an evidentiary hearing pursuant to *Franks v. Delaware* to demonstrate that Janowiecki was lying, and he believes that he is entitled to discovery of the names of any confidential informants or subjects of the stops that were referred to in Janowiecki's affidavit to demonstrate that she was lying. He further believes that the state committed *Brady* violations by not disclosing that there were no reports or documents about those events. We find no merit to appellant's arguments.

12.

## 1. *Franks* Hearing

{¶ 28} The first question we must address is whether appellant has made a substantial preliminary showing that a false statement was knowingly, intentionally, or recklessly included in the warrant affidavit. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667, syllabus, holds,

> Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in the Fourteenth Amendment, requires that a hearing be held at the defendant's request. * * *

> (a) To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. The allegation of deliberate falsehood or reckless disregard must point out specifically with supporting reasons the portion of the warrant affidavit that is claimed to be false. It also must be accompanied by an offer of proof, including affidavits or sworn or otherwise reliable statements of witnesses, or a satisfactory explanation of their absence.

See also *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980).

13.

{¶ 29} Here, the only evidence presented by appellant was his sworn affidavit in which he states that nothing described in Janowiecki's affidavit is true. However, general assertions of falsity by the defendant are insufficient to make a "substantial preliminary showing." *See State v. Sheron*, 8th Dist. Cuyahoga No. 98837, 2013-Ohio-1989, ¶ 35 (finding insufficient the defendant's affidavit in which he averred that the paragraphs in the warrant affidavit "are completely false," and "I did not engage in any drug transactions").

{¶ 30} Therefore, we hold that the trial court did not err in denying appellant's request to hold a hearing pursuant to *Franks v. Delaware.*

{¶ 31} Appellant, in his brief, suggests that it is unjust to deny him a *Franks* hearing without providing him the names of the confidential informants and subjects of the stops, for how else could he prove that those persons did not in fact exist. Related to this subject, the Supreme Court in *Franks* addressed the concern that if *Franks* hearings were conducted routinely, "they would be misused by defendants as a convenient source of discovery. Defendants might even use the hearings in an attempt to force revelation of the identity of informants." *Franks* at 167. In discussing why that concern did not outweigh the need to challenge the veracity of an affidavit, the court found, "The requirement of a substantial preliminary showing would suffice to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." *Id.* at 170.

14.

{¶ 32} As to the discovery of the identity of confidential informants,

The purpose of the [informant's privilege] is the furtherance and protection of the public in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, and, by preserving their anonymity, encourage them to perform that obligation.

*State v. Williams*, 4 Ohio St.3d 74, 76, 446 N.E.2d 779 (1983), citing *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). However, "[t]he identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense." *Id.* at paragraph one of the syllabus. "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro* at 628-629. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 629.

{¶ 33} Here, we find that the identities of the confidential informants and subjects of the stops are not vital to establishing any element of the crimes, nor would the identities be helpful or beneficial to appellant's defense such that they must be disclosed.

15.

Appellant was charged with trafficking based upon the quantity of drugs and other drug related items found in the various residences. Appellant was not charged with trafficking for any of the individual transactions observed by Janowiecki. Indeed, the controlled buys were not even testified to at trial. Further, while Janowiecki did testify to individuals who were stopped and who provided her with drugs, and while the identity of those individuals would be helpful to appellant to examine whether those transactions did in fact occur, and thus support or rebut the inference that appellant was engaged in drug trafficking, we find the probative value of that evidence to be so small relative to the overwhelming evidence of drug trafficking uncovered through the searches of the residences that it does not warrant the disclosure of the identity of those informants.[2]

{¶ 34} Interestingly, this exact argument has been raised by counsel for appellant before, and been rejected. In *State v. Dimmings*, 8th Dist. Cuyahoga No. 80149, 2002 WL 377141 (Feb. 28, 2002), the defendant was charged with a number of drug offenses. Before the trial, the defendant moved to suppress the evidence, and moved for disclosure of the confidential informant. The defendant in that case argued that the confidential informant referred to in the affidavit submitted in support of the search warrant did not exist. *Id.* at *1. The trial court ordered the state to produce the confidential informant for an in camera interview, and the state refused. Thereafter, the trial court granted the

---

[2] While not expressly raised by appellant, we find that the same reasoning applies to the subjects of stops that were testified to by Pritchard.

defendant's motion to suppress. *Id.* On appeal, the Eighth District held that the trial court abused its discretion in requiring the confidential informant's disclosure. The Eighth District reasoned that the defendant's bare allegation that there was no confidential informant was not sufficient to justify production of the informant. *Id.* at *2. In addition, the court found that the confidential informant's testimony would be irrelevant to the defendant's charges on the merits because he was not charged with any criminal offense in connection with the controlled buy. *Id.* Finally, the court held that "[a]bsent some substantial outside evidence to suggest that the affidavit of the officer is false or fraudulent, no [confidential informant] disclosure should be ordered." *Id.* at *3.

{¶ 35} Therefore, we hold that the trial court did not err in refusing to require the disclosure of the informants.

### 2. *Brady* Violations

{¶ 36} Turning now to appellant's arguments that the state committed *Brady* violations when it failed to inform him that there were no reports or documents created by Janowiecki during the course of her investigation prior to obtaining the warrant, we find that those arguments also lack merit.

{¶ 37} "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "Where, however, the evidence is revealed in time for the defense to use it effectively at or before trial, no

17.

constitutional violation has occurred." *State v. Barzacchini*, 96 Ohio App.3d 440, 454, 645 N.E.2d 137 (6th Dist.1994); *see also State v. Wickline*, 50 Ohio St.3d 114, 116, 552 N.E.2d 913 (1990) (emphasizing that *Brady* applies to discovery of information after trial, and holding that because the records were presented during the trial, there was no *Brady* violation).

{¶ 38} Here, the claimed knowledge that there were no reports or documents created by Janowiecki during the course of her investigation was revealed to appellant at the suppression hearing, which was well before the trial. Therefore, we hold that no *Brady* violation occurred.

### 3. The Search Warrant

{¶ 39} In addition to the above arguments, appellant passingly argues in his first assignment of error that the March 28, 2017 search warrant for 2820 Airport Highway, Apt. M was not based upon probable cause, and that it was not sufficiently particular.

{¶ 40} The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Likewise, Article I, Section 14 of the Ohio Constitution is nearly identical in its language, "and its protections are coextensive with its federal counterpart." *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998).

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court

18.

assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. (Internal citations omitted.)

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 41} As to the issue of probable cause, "in determining whether a search warrant was issued upon a proper showing of probable cause, reviewing courts must examine the totality of the circumstances." *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 13, citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for * * * conclud[ing] that probable cause existed." *Id.* "[A]ppellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.* at ¶ 14, quoting *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus.

{¶ 42} Here, Janowiecki, the affiant, averred that she personally observed foot traffic at 2820 Airport Highway, Apt. M consistent with drug trafficking, and that she personally observed the controlled buys and the results of the controlled buys, which

produced substances that field-tested positive for cocaine. We hold that this information is sufficient to demonstrate probable cause that evidence of drug trafficking was present at 2820 Airport Highway, Apt. M. Furthermore, because Janowiecki attested to facts that were based upon her personal observation, the credibility of any confidential informant was immaterial. Therefore, we hold that the trial court did not err when it found that the March 28, 2017 search warrant for 2820 Airport Highway, Apt. M was based upon probable cause.

{¶ 43} As to the issue of particularity, "[t]he manifest purpose of this particularity requirement was to prevent general searches. * * * [T]he requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987).

{¶ 44} "Courts addressing the particularity requirement of the Fourth Amendment are concerned with two issues. The first issue is whether the warrant provides sufficient information to 'guide and control' the judgment of the executing officer in what to seize. * * * The second issue is whether the category as specified is too broad in that it includes items that should not be seized." (Internal citations omitted.) *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 79. "A search warrant that includes broad categories of items to be seized may nevertheless be valid when the description is 'as specific as the circumstances and the nature of the activity under investigation permit.'" *Id.* at ¶ 80, quoting *United States v. Blum*, 753 F.2d 999, 1001 (11th Cir.1985).

20.

"Warrants that fail to describe the items to be seized with as much specificity as the government's knowledge and the circumstances allow are 'invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized.'" *Id.*, quoting *United States v. Fuccillo*, 808 F.2d 173, 176 (1st Cir.1987).

{¶ 45} Here, the warrant authorized the seizure of:

[C]ontrolled substances, namely Cocaine, Heroin, Fentanyl, and Marijuana a Schedule I & II drug, packaged for sale. Any tools, instruments, equipment, or paraphernalia or weapons, used to manufacture, store, process, or sell drugs of abuse. Safes, strongboxes, or lockboxes used to protect or conceal drugs of abuse. Currency of any type or nationality, jewelry, or other items of value. Personal papers, documents, books, financial records, drug transaction records, video tapes, audio cassette tapes, cellular phones, computers and related computer hardware and software all of which are believed to be derived from or instrumental to the trafficking in controlled substances, or the proceeds derived from trafficking in controlled substances. Papers, documents or utility records indicating the ownership or occupancy of said premises. Further photograph and fingerprint, at the scene, any adult subjects found inside the premises for the purpose of comparison to any latent fingerprints found at the scene on drug abuse evidence or any other evidence which is in

violation of 2925.03, 2925.11, 2925.12, 2925.13 of the OHIO REVISED CODE.

{¶ 46} We note that the only specific argument that appellant makes is that the warrant's reference to "money" was improper in that it was not sufficiently particular. Appellant asks why the "buy money" used in the controlled buys was not specifically described. "Currency" is included in the search warrant, and we hold that it is a sufficiently particular description of the items to be seized. To require the search warrant to be limited to the specific "buy money" would result in the failure to seize additional currency that is evidence of drug trafficking or the proceeds therefrom. Therefore, we hold that the search warrant was sufficiently particular.

### 4. Execution of the Search Warrant

{¶ 47} As the remaining arguments in his first assignment of error, appellant argues that the search warrant was not executed in accordance with R.C. 2935.12, and that the officers manhandled appellant while they were searching the apartment. It is not clear what remedy appellant seeks as a result of these alleged violations, but the only remedy in these proceedings that would appear to benefit appellant would be to suppress the evidence that was obtained through the search.

{¶ 48} R.C. 2935.12 describes the manner in which an officer may execute a search warrant. However, "[t]he plain language of R.C. 2935.12 provides no remedy for its violation, and we cannot 'brazenly ignore the unambiguous language of a statute.'" *State v. Bembry*, 151 Ohio St.3d 502, 2017-Ohio-8114, 90 N.E.3d 891, ¶ 29, quoting

22.

*Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8. Thus, "once a warrant has been issued, the exclusionary rule is not the appropriate remedy under Article I, Section 14 of the Ohio Constitution for a violation of R.C. 2935.12." *Id.* at ¶ 31. Therefore, we find no merit to appellant's arguments.

{¶ 49} Accordingly, we find that appellant's first and third assignments of error are not well-taken.

## B. Seizure of Items—Appellant's Second and Sixth Assignments of Error

{¶ 50} In his second assignment of error, appellant argues that the trial court erred in denying his motion pursuant to R.C. 2933.27 for the return of seized items, in particular the cash, the coin collection, the jewelry, and the vehicle. Appellant asserts that the trial court found that criminal charges were still pending against appellant and "the State has certified that the items are to be used as evidence against him." Appellant contends that the items were not offered as evidence. Further, appellant contends that the court erred in denying his motion without a hearing and by failing to make specific factual determinations pursuant to Crim.R. 12(F). Appellant revisits this issue in his sixth assignment of error.

{¶ 51} R.C. 2933.27 provides, "If, upon examination, the judge or magistrate is satisfied that the offense charged with reference to the things seized under a search warrant has been committed, he shall keep such things or deliver them to the sheriff of the county, to be kept until the accused is tried or the claimant's right is otherwise ascertained." Notably, this statute was enacted in 1953, prior to the forfeiture statutes.

23.

*See State v. Blackshaw*, 8th Dist. Cuyahoga No. 70829, 1997 WL 284748, *3 (May 29, 1997).

{¶ 52} Appellant is in effect seeking to have property that was seized from him, which may not be evidence, returned to him. While appellant focuses on the evidentiary aspect, appellant fails to recognize that the property may otherwise be subject to forfeiture. Pursuant to R.C. 2981.02(A)(1), "[c]ontraband involved in an offense," or "[p]roceeds derived from or acquired through the commission of an offense," are subject to forfeiture. The second part of the trial court's decision denying appellant's motion to return the property—which was not cited by appellant—recognized that the property is subject to an ongoing civil forfeiture action. Therefore, we hold that the trial court did not err in denying appellant's motion.

{¶ 53} Furthermore, to the extent that appellant argues that the trial court's decision violated the requirement under Crim.R. 12(F) to state its essential findings on the record where factual issues are involved in determining a motion, we disagree. The trial court's judgment gave its essential findings that the motion was being denied because the property was to be used as evidence and was subject to civil forfeiture proceedings.

{¶ 54} Accordingly, appellant's second and sixth assignments of error are not well-taken.

24.

### C. Sufficiency of the Evidence—Appellant's Fourth Assignment of Error

{¶ 55} In his fourth assignment of error, appellant begins by arguing that there was no proof that he "prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed cocaine." He then transitions to making the same arguments that were the subject of his first and third assignments of error, namely that Janowiecki completely fabricated her account, and the prosecution committed *Brady* violations by not disclosing that Janowiecki did not create reports or documents.

{¶ 56} The first part of appellant's argument challenges the sufficiency of the evidence supporting his convictions for trafficking in cocaine. In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 57} Here, appellant was charged under R.C. 2925.03(A)(2), which provides,

(A) No person shall knowingly do any of the following:

* * *

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶ 58} Supporting appellant's convictions under this statute are the sheer quantity of drugs, the fact that the drugs were packaged by weight, the digital scales used to weigh the drugs, the presence of a mixing agent and thousands of baggies, some with their corners torn off, the tens of thousands of dollars in cash, a significant portion of which was in $20 bills, the loaded firearms, and the eyewitness testimony of foot traffic consistent with drug trafficking. *See State v. Rutledge*, 6th Dist. Lucas No. L-12-1043, 2013-Ohio-1482, ¶ 15 (recognizing that "numerous courts have determined that items such as plastic baggies, digital scales, and large sums of money are often used in drug trafficking and may constitute circumstantial evidence of conduct proscribed by R.C. 2925.03(A)(2)"). From this evidence, we hold that a rational trier of fact could have found the essential elements of drug trafficking under R.C. 2925.03(A)(2) proven beyond a reasonable doubt. Therefore, appellant's convictions are not based upon insufficient evidence.

{¶ 59} As to the second part of appellant's argument, which concerns Janowiecki's testimony and potential *Brady* violations, we have addressed these issues in appellant's first and third assignments of error, and have found no merit to them.

{¶ 60} Accordingly, appellant's fourth assignment of error is not well-taken.

### D. Mistrial for Prosecutorial Misconduct—Appellant's Fifth, Seventh, and Eighth Assignments of Error

{¶ 61} In his fifth assignment of error, appellant argues that the trial court erred when it denied his motion for a mistrial, which was based upon the prosecutor stating in

26.

closing that extensive "foot traffic" established that appellant was guilty of trafficking. Specifically, the prosecutor stated, "All that narcotics, all those drugs, acknowledge to be Mr. Pitts', by counsel. Baggies, guns, $40,000, that's drug trafficking, ladies and gentlemen. Conduct in advance of these search warrants, that's consistent with drug activity, that's drug trafficking."

{¶ 62} Relatedly, appellant argues in his seventh assignment of error that the prosecution misled the jury as to the specific crime that appellant was charged with, and by reciting facts that would support finding that the crime occurred. Likewise, in his eighth assignment of error, appellant argues that the state constructively amended the indictment to include the asserted sales and activities described by Janowiecki.

{¶ 63} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Davis*, 6th Dist. Ottawa No. OT-09-032, 2010-Ohio-4383, ¶ 71, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127-128, 580 N.E.2d 1 (1991). "The grant or denial of a mistrial rests within the discretion of the trial court and is subject to review on appeal under an abuse of discretion standard." *Id.*, citing *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). An abuse of discretion connotes that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 64} Here, appellant argues that a mistrial was warranted because of prosecutorial misconduct. "The test regarding prosecutorial misconduct in closing

27.

arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. * * * Moreover, the code provides that an attorney is not to allude to matters which will not be supported by admissible evidence." *Id.*

{¶ 65} Appellant's theory as articulated in his assignments of error is that the prosecutor constructively amended the indictment to charge appellant with trafficking through the various sales and other activities described by Janowiecki. According to appellant, this is in contrast to the indictment which charges him based only on the drugs found in his possession on March 28 and September 29, 2017. Appellant then contends that the prosecutor, through his closing argument, misled the jury into thinking that it was convicting him for the sales and other activities described by Janowiecki, which he argues warranted a mistrial. We find no merit to appellant's arguments.

{¶ 66} First, the prosecution did not constructively amend the indictment. The trial was concerned with the facts and circumstances surrounding the charge that appellant was engaged in drug trafficking under R.C. 2925.03(A)(2) on March 28 and September 29, 2017, and the jury was properly instructed to that effect.

{¶ 67} Second, the prosecution did not commit prosecutorial misconduct by suggesting to the jury that the admitted evidence of drugs, baggies, guns, $40,000 cash, and the activities of appellant prior to the execution of the search warrants constitutes

28.

evidence of drug trafficking. "Prosecutors are entitled to latitude as to what the evidence has shown and what inferences can be drawn therefrom." *State v. Ballew*, 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996), quoting *State v. Richey*, 64 Ohio St.3d 353, 362, 595 N.E.2d 915 (1992). As discussed in appellant's fourth assignment of error, in addition to the drugs, baggies, guns, and cash, the testimony of Janowiecki and Pritchard regarding appellant's conduct before the incidents constitutes evidence that appellant was engaged in drug trafficking under R.C. 2925.03(A)(2) on March 28 and September 29, 2017. Thus, the prosecutor's statements in closing were proper and did not mislead the jury.

{¶ 68} Third, and finally, because there was no prosecutorial misconduct, we hold that the trial court did not abuse its discretion in denying appellant's motion for a mistrial.

{¶ 69} Accordingly, appellant's fifth, seventh, and eighth assignments of error are not well-taken.

## IV. Conclusion

{¶ 70} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgments of the Lucas County Court of Common Pleas are affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.