[Cite as *State v. Pitts*, 2023-Ohio-2005.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

        Appellant

v.

Ronald D. Pitts

        Appellee

Court of Appeals Nos. L-22-1047
L-22-1048

Trial Court Nos.  CR0201702414
CR0201703126

**DECISION AND JUDGMENT**

Decided:  June 16, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellant.

James R. Willis and Clarissa A. Smith, for appellee.

* * * * *

**DUHART, J.**

**{¶ 1}** This is a consolidated appeal filed by appellant, the state of Ohio, from the

February 7, 2022 judgment of the Lucas County Common Pleas Court.  For the reasons

that follow, we reverse and remand to the trial court.

## Assignment of Error

I. The trial court erred in dismissing a meritorious forfeiture claim based on a decision issued three years after the parties took action follow[ing] a well-established local practice permitting entry of a dismissal of a civil action following its transfer and consolidation into a criminal case.

## Background

{¶ 2} We first note that a more extensive recitation of the facts in this case are set forth in *State v. Pitts*, 6th Dist. Lucas No. L-18-1242, 2020-Ohio-2655. The following facts are relevant to the instant appeal.

### *March 28, 2017 Searches and Related Cases*

{¶ 3} On March 28, 2017, the Toledo Police Department executed search warrants at two properties in Toledo, Ohio: 2820 Airport Highway, Apartment M, and 1828 Dunham Street. During the execution of these search warrants, police found large amounts of drugs, as well as currency, and other items. As a result, two forfeiture actions were filed against Pitts[1] on April 3, 2017. In case No. CI17-2218, the state sought forfeiture of $18,503.00 in U.S. currency as well as "[a]ssorted coins and collector type money" on the basis that these items were either an instrumentality or proceeds under

---

[1] These cases, as well as the related criminal case, were also brought against a co-defendant, Megan Weemes.

R.C. 2981.02. In case No. CI17-2219, the state sought forfeiture of $7,144.00 in U.S. currency alleging the currency was either an instrumentality used in the commission of felony offenses or proceeds from the commission of felony offenses.

{¶ 4} Shortly thereafter, Pitts was indicted in case No. CR17-2414 with two counts of trafficking in cocaine, in violation of R.C. 2925.03(A)(2) and (C)(4)(g), felonies of the first degree, with major drug offender specifications under R.C. 2941.1410; two counts of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(f), felonies of the first degree, with major drug offender specifications under R.C. 2941.1410; one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(c), a felony of the fourth degree; one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(d), a felony of the third degree; and one count of possession of marijuana in violation of R.C. 2925.11(A) and (C)(3)(d), a felony of the third degree.

{¶ 5} On August 22, 2017 and September 26, 2017, the state filed motions to transfer the civil forfeiture cases, case No. CI17-2218 and case No. CI17-2219, respectively, to the related criminal action, case No. CR17-2414. The motions were granted and orders were filed transferring the civil forfeiture cases to the criminal docket of Judge Stacy Cook and consolidating the civil cases with criminal case No. CR17-2414. The transfer orders also contained language *dismissing* the civil case numbers without prejudice, waiving costs assessed to the state under the civil case numbers, and transferring the remaining costs to case No. CR17-2414.

3.

*September 29, 2017 Searches and Related Cases*

**{¶ 6}** On September 29, 2017, the Toledo police executed two search warrants at 2820 Airport Highway, Apartment M and Apartment L. Again significant amounts of drugs and other items were discovered.

**{¶ 7}** Stemming from these searches, the state filed a civil complaint in case No. CI17-4320, seeking the forfeiture of $18,644.00 in U.S. currency, assorted jewelry, a 2006 Chevrolet Trailblazer and a 2002 Jeep Liberty. Pitts was also criminally charged, in case No. CR17-3126, with one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(g), a felony of the first degree, with a major drug offender specification under R.C. 2941.1410; one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(f), a felony of the first degree, with a major drug offender specification under R.C. 2941.1410; one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(c), a felony of the fourth degree; one count of possession of marijuana in violation of R.C. 2925.11(A) and (C)(3)(c), a felony of the fifth degree; one count of obstructing official business in violation of R.C. 2921.31(A) and (B), a second-degree misdemeanor; and one count of illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1) and (F), a fourth-degree misdemeanor.[2] The state later dismissed the misdemeanor charges.

---

[2] Several of these charges were also brought against Pitts' two co-defendants, Megan Weemes and Reco Nelson, and the related forfeiture action was also brought against Weemes.

**{¶ 8}** On January 19, 2018, the state filed a motion to transfer the civil forfeiture case, case No. CI17-4320, to the related criminal action, case No. CR17-3126. This request was granted and the court ordered case No. CI17-4320 be transferred to the criminal docket of Judge Stacy Cook and consolidated with case No. CR17-3126. The transfer order also contained language dismissing case No. CI17-4320 without prejudice.

*Criminal Cases*

**{¶ 9}** On October 16, 2017, in case No. CR17-2414, Pitts filed a "Motion Invoking Revised Code of Ohio § 2933.27," in which he sought, inter alia, the return of certain seized items. On June 26, 2018, the trial court denied this request on the basis that the state had certified that items seized were to be used as evidence and that there were "civil forfeiture actions still pending."

**{¶ 10}** The criminal cases were tried together to a jury starting October 15, 2018. The jury returned verdicts of guilty on all counts and specifications against Pitts. Pitts was sentenced to 11 years in prison in case No. CR17-2414, and 11 years in prison in case No. CR17-3126, to be served consecutively for a total prison term of 22 years.[3]

**{¶ 11}** At the sentencing hearing held on October 31, 2018, the following discussion was had regarding the status of the civil forfeiture case.

---

[3] Pitts appealed his convictions and sentences.

5.

THE COURT: And there's a civil matter with regard to the forfeiture that will maintain in stayed position until further discussion with the Court and all attorneys have made their entry of appearance on that.

[Attorney for Pitts]: Thank you, Judge.

* * *

[Attorney for Pitts]: I will enter an appearance soon, Your Honor.

THE COURT: Thank you. And it will remain stayed at this time.

{¶ 12} Pitt filed additional motions seeking the return of the seized property after trial. On the date of sentencing, Pitts filed a motion requesting the return of all property seized from him. Two motions, both entitled "Second Motion for the Return of Property Seized as Evidence" were filed on March 11, 2019 and March 25, 2019. All three motions were similar. The trial court denied the "Second Motion for the Return of Property Seized as Evidence", finding that most of the property sought was subject to the civil forfeiture actions which were "consolidated into" the criminal cases, and ordered the civil forfeiture proceedings stayed pending conclusion of Pitts' direct appeal. Regarding the remaining items, the court found that it would be inappropriate to return any items since the case was on direct appeal.

{¶ 13} On September 30, 2019, Pitts filed a motion under the civil forfeiture case numbers, inter alia, requesting that the forfeiture cases be dismissed, or that the stays in the forfeiture cases be dissolved. This motion was denied by the trial court on May 14,

6.

2020. The trial court noted that the motion involved "three civil forfeiture cases that were originally filed as separate civil actions" but were then consolidated into the criminal cases, and that the direct appeal was pending. The court found "no reason to lift its stay on the civil forfeiture actions" and therefore found Pitts' substantive arguments premature.

{¶ 14} On April 24, 2020, we decided Pitts' direct appeal. *Pitts,* 6th Dist. Lucas No. L-18-1242, 2020-Ohio-2655. There, we affirmed the trial court's conviction and sentence, as well as the trial court's denial of Pitts' "Motion Invoking Revised Code of Ohio § 2933.27." On appeal, Pitts sought to have property which was seized but not used as evidence returned to him. We denied that portion of the appeal on the basis that the trial court's decision "recognized that the property is subject to an ongoing civil forfeiture action." *Id.* at ¶ 52.

{¶ 15} On May 21, 2020, Pitts filed another motion seeking to "advance [the forfeiture cases] forward toward a speedy resolution," or alternatively a motion for leave to file an interlocutory appeal. The court ruled it did not have jurisdiction to proceed as the forfeiture cases were stayed pending appeal and Pitts had appealed his convictions to the Ohio Supreme Court.

{¶ 16} On September 1, 2020, the Ohio Supreme Court declined to accept Pitts' appeal for review. *State v. Pitts*, 159 Ohio St.3d 1488, 2020-Ohio-4232, 151 N.E.3d 635.

7.

Pitts also appealed to the United States Supreme Court, which denied certiorari on March 22, 2021. *Pitts v. Ohio*, 141 S.Ct. 1692, 209 L.Ed.2d 467 (2021).

*Motion at Issue on Appeal*

{¶ 17} On April 20, 2021, Pitts filed a motion to vacate the stays in the forfeiture cases and to dismiss the forfeiture cases, which he defined as a segment of the consolidated case. He noted that his direct appeals had been "fully consummated" and thus the case should no longer be stayed. He also pointed out that the forfeiture cases were dismissed by the court. He objected to the consolidation of a civil and a criminal case, and he contended that the items seized were not relevant to his convictions. Pitts also renewed previous arguments, many of which were found not well-taken on direct appeal, including claims of alleged police and prosecutorial misconduct, and challenges to the validity of the search warrant and/or supporting affidavits.

{¶ 18} The state opposed this motion.

*Trial Court's Opinion*

<u>State v. Thomas</u>

{¶ 19} As a preliminary matter, we find it necessary to discuss our prior decision in *State v. Thomas*, 6th Dist. Lucas No. L-19-1108, 2021-Ohio-151, which was relied upon by the trial court in its decision. In *Thomas*, we reviewed the denial of a non-party's motion to intervene in a civil forfeiture action. In a footnote, we made the following relevant comment:

8.

We note the potential procedural quagmire created by the trial court in dismissing the forfeiture proceedings, sua sponte, prior to adjudicating that separate matter in the consolidated proceedings. Despite the consolidation of the criminal proceedings with the civil forfeiture proceedings, this dismissal ended the forfeiture case. After consolidation, each case retains its original identity, as the matters are not merged into a single case. *See Transcon Builders, Inc., v. City of Lorain*, 49 Ohio App.2d 145, 359 N.E.2d 715 (9th Dist.1976), at the syllabus; *see also* Lucas County Gen.R. 5.02(A) and (B) (referencing consolidated proceedings, and requiring transfer of a civil forfeiture case to the judge presiding over a related criminal proceeding, with no provision for "merger" of the two, separate cases that are consolidated). As a practical matter, once the trial court dismissed the forfeiture proceeding, there was no longer a pending matter in which to intervene. *Id*. at ¶ 4, fn. 1.

<u>Decision</u>

**{¶ 20}** The trial court rendered its opinion as to Pitts' April 20, 2021 motion on February 7, 2022. As the direct appeal had concluded, the court vacated the stay. The court noted that many of Pitts' substantive arguments ("alleged prosecutorial and police misconduct, alleged *Brady* violations, challenges to the validity of the underlying search warrants and/or supporting affidavits, allege[d] speedy trial violations") had been

9.

previously found to be not well-taken by the trial court and/or this court on direct appeal and, therefore, the trial court found them not well-taken.

{¶ 21} With respect to Pitts' procedural arguments, that the forfeiture actions did not survive, either because the civil actions were dismissed, or that they had proceeded to trial along with the criminal cases since they had been consolidated, the trial court first pointed out the procedure followed in these cases, whereby the civil forfeiture cases were transferred and consolidated into the criminal cases, was consistent with the relevant version of Lucas County Common Pleas Court Gen. R. 5.02(B)(2).

{¶ 22} The trial court noted that, although the rule did not provide for the dismissal of the civil forfeiture action following the transfer and consolidation into the related criminal case, the transfer orders used to transfer the civil forfeiture cases below were "templates reflecting the General Division's established or standard practice" and "[had] been used in many other cases."  The trial court also observed that "the dismissal of the freestanding civil forfeiture cases was simply an administrative mechanism employed by the General Division to signal that no further litigation would proceed under those civil case numbers," and that the transfer orders "expressly contemplate the survival of such civil forfeiture matters by transferring the 'remaining costs' therein to the criminal cases."  Additionally, the trial court pointed out that the trial court and the parties "operated on the understanding that the civil forfeiture matters were transferred

10.

into [the] criminal cases and were simply stayed pending resolution of the criminal matters."

{¶ 23} Although the trial court found the state's other arguments in opposition to the motion "compelling," the trial court declined the state's invitation to disregard the footnote in *Thomas* and instead, the trial court dismissed the civil forfeiture matters.

{¶ 24} The state appealed.

## Relevant Law

### *Civil Forfeiture*

{¶ 25} R.C. Chapter 2981 allows "a law enforcement officer [to] seize property that the officer has probable cause to believe is property subject to forfeiture." R.C. 2981.03(A)(2). Such property includes "[c]ontraband involved in an offense," "[p]roceeds derived from or acquired through the commission of an offense," and instrumentalities "used in or intended to be used in the commission or facilitation of," felonies as well as certain other offenses. R.C. 2981.02(A). "Pursuant to R.C. 2981.03, a prosecutor may seek forfeiture of a seized property by either including a forfeiture specification in the charging instrument, R.C. 2981.04, or by filing a civil action, R.C. 2981.05, or both." *Erie Cty. Sheriff's Office v. Lacy*, 6th Dist. Erie Nos. E-14-022, E-14-023, 2015-Ohio-72, ¶ 8, citing *State v. Hagan*, 11th Dist. Ashtabula No. 2014-A-0013, 2014-Ohio-4308, ¶ 13.

11.

**{¶ 26}** Here, the state filed a civil forfeiture action under R.C. 2981.05, pursuant to which a prosecutor can commence a civil forfeiture action by filing a complaint "requesting an order that forfeits the property to the state or political subdivision." R.C. 2981.05(A).

*Consolidation*

**{¶ 27}** A previous version of Lucas County Common Pleas Gen.R. 5.02(B)(2) detailed the procedure for consolidation of a civil forfeiture case in the following manner.[4]

Pursuant to O.R.C. 2981.05(D)(1), when a civil forfeiture is sought for an amount in excess of $15,000, the prosecutor need not wait for an indictment, and may commence a civil forfeiture action at any time, requesting an order that property involved in a criminal offense subject to forfeiture under section 2981.02 of the Ohio Revised Code shall be forfeited to the state. If the prosecutor determines its civil forfeiture action relates to a pending criminal case, the prosecutor shall seek to transfer its case to the judge assigned to preside over the criminal case. The request to transfer shall be indicated by the prosecutor on the case designation sheet,

_____

[4] This rule has since been amended and renumbered as Gen.R. 5.02(C)(2). The new rule does not reference consolidation; it merely states that if the civil forfeiture case is related to a pending criminal case, the prosecutor should seek to transfer the case to the civil docket of the judge assigned to preside over the criminal case.

12.

by including the pending criminal case number and the judge to whom it is assigned, and by filing two (2) original motions to transfer and consolidate, bearing both the civil and criminal case numbers, with the criminal department of the Clerk of Court's office. Two (2) original proposed orders shall be submitted with the motions to transfer. The consolidation of these cases will have no effect on the regular assignment of new cases.

### Arguments

{¶ 28} The state has raised numerous arguments as to why *Thomas* should not be applied in the instant case. The state observes, as did the trial court, that the procedure followed in these cases, the consolidation of the civil forfeiture case into the related criminal case, and the subsequent dismissal on the docket of the civil case number, was consistent with the established practice of the Lucas County Court of Common Pleas. The state also contends that the procedure followed the requirement of the local rule; however, as noted by the trial court, the local rule did not discuss the dismissal of the civil case number. The state asserts that the parties relied upon this procedure, and that Pitts waived any claims relating to the procedure by not timely objecting to it.

{¶ 29} The state further maintains that we should not apply *Thomas* retroactively. The state observes that the dismissals in the original civil case numbers were without prejudice and the state could have refiled the cases; however, the statute of limitations in those cases expired prior to the issuance of the *Thomas* case. The state argues that the

13.

"[a]pplication of *Thomas* retroactively to a well-established court procedure eviscerates the State's ability to pursue its forfeiture claim," and that retroactive application would be inequitable under the circumstances. The state also alleges that, prior to *Thomas*, Ohio courts did not uniformly follow the rule, cited in the footnote, that consolidated cases are not merged, but retain their separate identity.

{¶ 30} Pitts counters that the forfeiture cases were not properly commenced, and that, even if they were, once the civil forfeiture cases were dismissed, they could not be resurrected. He also objects to consolidating a civil case with the criminal case and seems to suggest that the state was required to first get an indictment. He argues that the forfeitures were not "appropriately pursued in a timely fashion," and that the state "may not delay any forfeiture determinations until there is a disposition of any related criminal charges." He additionally renews his allegations of police misconduct, lack of probable cause and violations of *Brady*.

## Analysis

### *Procedure prior to* Thomas

{¶ 31} The trial court has stated that the procedure it followed in this case was an established practice in the trial court and that the intent of the transfer orders was to comply with the relevant version of Gen.R. 5.02(B)(2). The trial court has explained that the dismissal of the civil forfeiture case numbers was "simply an administrative

14.

mechanism employed by the General Division to signal that no further litigation would proceed under those civil case numbers."

*Intent to Transfer Civil Forfeiture to Criminal Case*

**{¶ 32}** It is apparent both in the language of the transfer orders as well as the treatment of the civil forfeiture actions by the parties and the court that the intent of the transfer order was not to terminate the forfeiture actions, but rather that they continue under the criminal case number.[5]

**{¶ 33}** With respect to the language of the transfer order, we note that the title ("Transfer Order") infers that the civil claims are being transferred, not dismissed. This intent is also found in language that each case is "[c]onsolidated from" the civil case number and "[c]onsolidated to" the criminal case number, and then, as discussed, in each order, the court dismissed the civil case number without prejudice. Additionally, as pointed out by the trial court, the transfer orders "contemplate the survival of [the] civil forfeiture matters by transferring the 'remaining costs' therein to the criminal cases."

**{¶ 34}** The court and the parties also treated the forfeiture cases as ongoing albeit stayed.

---

[5] Pitts contends that a criminal case cannot be consolidated with a civil case. However, as pointed out by the state, there are many instances in the law where a civil matter is handled under a criminal case number. *See*, *e.g., State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 47 ("It is well settled that a postconviction petition initiates a separate civil proceeding notwithstanding the use of an existing criminal-case number.").

15.

*Application of* <u>Thomas</u>

**{¶ 35}** The footnote in *Thomas* states that the dismissal of the civil case number in the transfer order "ended the forfeiture case." Application of this footnote supports the trial court's dismissal of the forfeiture cases here. However, the state has argued that *Thomas* should be applied prospectively only, citing *DiCenzo v. A-Best Prods. Co., Inc.*, 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132.

**{¶ 36}** "An Ohio court decision applies retrospectively unless a party has contract rights or vested rights under the prior decision." *Id*. at paragraph one of syllabus. The state contends that retroactive application of the footnote interferes with its vested right of forfeiture.

**{¶ 37}** An accrued cause of action is considered a vested right. *Weeton v. Pradist Satayathum, M.D.*, 21 Ohio App.3d 82, 486 N.E.2d 246 (8th Dist.1984).

**{¶ 38}** Prior to *Thomas*, the procedure followed by the trial court in this case was an established practice in the court and according to that practice, the case was not considered dismissed. Rather, the intent of the trial court was to transfer the civil forfeiture actions to the criminal case numbers, and until the motion at issue was filed in the trial court, the court and both parties treated the forfeiture cases as existing but stayed.

**{¶ 39}** Application of the footnote in *Thomas* results in the abolishment of the state's right to seek forfeiture in this case. By the time *Thomas* was decided, the state's right to refile its claims was barred by the applicable statutes of limitation. *See* R.C.

16.

2981.05(D)(5), R.C. 2305.19. Therefore, limiting our decision to the facts of this particular case, we find the *Thomas* decision cannot be applied retroactively as it would eliminate the state's vested right to seek civil forfeiture.

*Consideration of Pitts' Arguments*

**{¶ 40}** Although we have found the footnote in *Thomas* should not be applied retroactively, we will still consider whether the trial court's decision was supported by Pitts' arguments.

*Waiver*

**{¶ 41}** Pitts now objects to the procedure used by the trial court; however, we find that he waived this objection by not raising it sooner. We find support for this conclusion in *Zimmie v. Zimmie*, 8th Dist. Cuyahoga Nos. 43299, 44803, 44804, 1983 WL 5747 (Feb. 3, 1983), *aff'd in part and rev'd in part on other grounds*, 11 Ohio St.3d 94, 96, 464 N.E.2d 142 (1984).

**{¶ 42}** In *Zimmie*, plaintiff-wife filed a complaint for divorce and defendant-husband filed a counterclaim ("first case"). Husband then dismissed his counterclaim and wife later dismissed her complaint in the first case. That same day, wife filed a new complaint ("second case"). Husband moved to reinstate his counterclaim in the second case, which motion was subsequently granted. Wife appealed the reinstatement of the counterclaim. The court then consolidated the first case and the second case. On appeal, wife argued that the trial court did not have authority to proceed on husband's

17.

counterclaim after he voluntarily dismissed it. The court disagreed. While the court acknowledged that it had no further jurisdiction to act once husband dismissed his counterclaim, the court noted the subsequent consolidation of the two cases. *Id*. at *2. The court found that it was the intent of the court, with the consolidation order, "to incorporate by reference the amended counterclaim * * * thus, permitting, in effect, a refiling of the counterclaim in the new action." *Id*. Although the appeals court noted that this procedure was improper, the court found that wife had waived her right to complain "of this procedural defect" as she had not objected to the order of consolidation. *Id.*

{¶ 43} The Ohio Supreme Court partially reversed the court of appeal's decision on another basis; however, it agreed with the court of appeals' conclusion that wife "failed to interpose any objection to the trial court's reinstatement and consolidation order" and thus waived her right to complain of the error. *Zimmie v. Zimmie*, 11 Ohio St.3d at 96, 464 N.E.2d 142.

{¶ 44} Here, Pitts did not object to the transfer of the civil forfeiture claim into the criminal case number, until he filed the underlying motion at issue on April 20, 2021. Had Pitts objected sooner, the state could have refiled its complaints; however, the statute of limitations had expired prior to Pitts' objection (and prior to the footnote in *Thomas*). We find, as in *Zimmie*, that although the procedure used below was problematic, the intent of the procedure was to continue the forfeiture action into the consolidated criminal case, and Pitts waived any error with respect to that procedure.

18.

*Additional Arguments*

**{¶ 45}** Pitts continues to contest the legality of one of the search warrants and the underlying convictions, raise allegations of violations of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and argue that there was no probable cause to seize the property at issue. These arguments were found not well-taken in our decision regarding the direct appeal and thus are barred by the doctrine of res judicata. *See State v. Davis*, 6th Dist. Lucas No. L-22-1100, L-22-1101, 2022-Ohio-4767, ¶ 19.

**{¶ 46}** Pitts additionally raises several arguments that the forfeiture claims were not timely filed. First, he maintains that the state cannot "delay any forfeiture determinations until there is a disposition of any related criminal charges"; however, R.C. 2981.05(C) and (D)(2) state that the civil forfeiture action should be stayed during the pendency of the related criminal proceedings. Secondly, to the extent that he is also arguing a violation of his speedy trial rights, we find these inapplicable to the civil forfeiture claims. *See N.V. v. W.S.*, 6th Dist. Sandusky No. S-08-032, 2009-Ohio-3809, ¶ 23 (finding claimed violation of speedy trial rights did not apply to custody proceedings as they are "civil in nature.").

**{¶ 47}** Pitts also raises a due process claim, and cites to *United States v. Eight Thousand Eight Hundred & Fifty Dollars,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), in support of his argument that the case was not commenced and prosecuted within constitutionally permissible time limits. This argument was not raised in the Pitts'

19.

April 20, 2021 motion.[6] "Generally, appellate courts will not consider errors which could have been, but were not, called to the attention of the trial court, including constitutional issues raised for the first time on appeal." (Citation omitted.) *State v. Wesley*, 149 Ohio App.3d 453, 2002-Ohio-5192, 777 N.E.2d 905, ¶ 5 (6th Dist.). Therefore, we decline to consider Pitts' due process argument.

**Conclusion**

{¶ 48} For these reasons, we find that the trial court erred in dismissing the state's civil forfeiture claims and we find the state's assignment of error well-taken.

{¶ 49} In light of the foregoing, we reverse the judgment of the Lucas County Common Pleas Court and remand this matter to the trial court for further proceedings consistent with this opinion. Pursuant to App.R. 24, Pitts is hereby ordered to pay the costs incurred on appeal.

Judgment reversed,
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

---

[6] To the extent this argument was raised in any of Pitts' other motions filed in the trial court, the rulings on these motions are not before this court for consideration.

20.

Thomas J. Osowik, J.

_____
JUDGE

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

Christine E. Mayle, J.
CONCURS IN JUDGMENT
AND WRITES SEPARATELY.

_____
JUDGE

**MAYLE, J.**

{¶ 50} I concur in judgment, but I respectfully disagree with some of the analysis.

{¶ 51} In *State v. Thomas*, 6th Dist. Lucas No. L-19-1108, 2021-Ohio-151, this court considered whether a trial court erred when it denied a non-party's motion to intervene in a civil forfeiture case. When recounting the procedural history of the case, this court noted that "the trial court ordered the civil [forfeiture] case transferred to and consolidated with the criminal case" and "on its own initiative then dismissed the civil [forfeiture] case without prejudice." *Id.* at ¶ 4.[7] This court then dropped a footnote to

---

[7] As we know from the trial court's opinion in this case, this was a standard "administrative mechanism employed by the General Division * * *" of the Lucas County Court of Common Pleas.

21.

"note the potential procedural quagmire" caused by the purported dismissal *and* transfer of the civil case, and observed that "[a]s a practical matter, once the trial court dismissed the forfeiture proceeding, there was no longer a pending matter in which to intervene." *Id.* at ¶ 4, f.n. 1. Ultimately, however, this court concluded that the trial court did not abuse its discretion when it denied the motion to intervene because the non-party "unreasonably waited nearly four months to intervene into *the pending litigation * * *"*— i.e., the civil case that was ostensibly transferred *and* dismissed without prejudice before it was consolidated with the criminal case. (Emphasis added.) *Id.* at ¶ 25.

{¶ 52} It is clear that the *Thomas* footnote—which opined that there was "no longer a pending matter in which to intervene"—was mere dictum. The footnote was an aside within the introductory section of the opinion, unrelated to any issue raised by the parties, and not material to this court's judgment. In fact, the *sua sponte* opinion contained in that footnote is contrary to the ultimate decision in *Thomas*—i.e., a non-party was properly precluded by the trial court from intervening into "the pending litigation." *Id.* at ¶ 25.

{¶ 53} Black's Law Dictionary defines "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential." *Black's Law Dictionary* 1240 (10th Ed.2014). In other words, dictum has "no precedential value." *Estate of Bosenberg v. Klem*, 6th Dist. Lucas No. 149700, 1982 WL 6557, * 4 (Sept. 3, 1982). *See also State v.*

22.

*Ameem*, 8th Dist. No. 111898, 2023-Ohio-1371, ¶ 10 ("Dicta is not binding in subsequent cases as legal precedent."); *Gissiner v. Cincinnati,* 1st Dist. No. C–070536, 2008-Ohio-3161, ¶ 15, citing *Episcopal School of Cincinnati v. Levin,* 117 Ohio St.3d 412, 2008-Ohio-939, 884 N.E.2d 561, ¶ 27 ("Dicta is not authoritative, and, by definition, cannot be the binding law of the case.").

{¶ 54} I am therefore confused by the majority's analysis of the *Thomas* footnote and ultimate conclusion that the footnote "cannot be applied retroactively." The *Thomas* footnote is dictum; it is—by its very nature—mere persuasive authority that cannot be "applied," in any case, as binding precedent *at all*.

{¶ 55} Moreover, in my view, the *Thomas* footnote is not very persuasive. Without any analysis at all, *Thomas* opined that "[a]s a practical matter, once the trial court dismissed the forfeiture proceeding, there was no longer a pending matter in which to intervene." *Thomas* at ¶ 4, f.n. 1. But the opposite is also true—i.e., as a practical matter, once the trial court transferred the forfeiture proceeding, there was no longer a pending matter to dismiss. That is the true crux of the issue: the trial court's order is inherently self-contradictory. "The case law makes pellucid that the dispositive consideration in interpreting a self-contradictory order—at least where neither construction of the order does more violence to its language than the other—is the issuing judge's intent." *Subsalve USA Corp. v. Watson Manuf., Inc.*, 462 F.3d 41, 46 (1st

23.

Cir.2006) (citing cases). When determining the judge's intent, "court orders, like statutes, should be read as a whole." *Id* at 45.

{¶ 56} For example, in *Subsalve*, the court considered a district court order that stated: "For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED. This matter shall be transferred to the Northern District of Florida." *Id.* at 43. The appellate court recognized that the "order is contradictory on its face: after all, the order purports both to terminate the action (by dismissal) and to continue it (by transfer) in another district." *Id.* Because "the judge could not have intended that both commands be obeyed[,]"—and because the order when "fairly read, directs two incompatible results"—the appellate court turned to "[t]he record of the proceedings below" to determine the judge's true intent. *Id.* at 45. The appellate court noted that the judge emphasized, twice, in his memorandum decision that he was adopting the magistrate's recommendation to transfer the case (without mentioning the recommendation to grant the motion to dismiss), and eventually "undertook to clarify the matter by vacating the judgment of dismissal." *Id.* The appellate court ruled that, consistent with the "unmistakable signs of the district court's abiding intent," the order effected a transfer of the action. *Id.* at 47-48. *Cf. Tootle v. Sec'y of the Navy*, 446 F.3d 167, 172-73 (D.C. Cir.2006) (an order that dismissed a case for lack of subject matter jurisdiction, but also purported to transfer the case to the Court of Federal Claims,

effected a dismissal because the order expressly stated that it was final and appealable and, therefore, "the District Court clearly intended to grant the motion to dismiss * * *.")

{¶ 57} Here, as recognized by the majority, the relevant orders are labeled a "Transfer Order," state that each case is "[c]onsolidated from" the civil case number and "consolidated to" the criminal case number, and transfer the "remaining costs" therein to the criminal cases—all of which are unmistakable signs of the trial judge's intent to transfer the civil forfeiture cases so that they could proceed under the criminal case number. To the extent that there is any ambiguity given the contradictory nature of the trial court's simultaneous command that the civil cases were also "dismissed without prejudice," it is crystal clear from the subsequent court proceedings that the forfeiture cases *were actually transferred* and consolidated with the criminal cases, and that all parties and the court fully understood that the forfeiture cases were pending but stayed until the criminal cases were resolved.

{¶ 58} In sum, it was the trial judge's obvious intent to transfer the civil cases and consolidate them with the criminal cases. For that reason, I agree that this case should be reversed and remanded to the trial court.

25.